(No. 22875.—

THE PEOPLE *ex rel.* Robert M. Sweitzer, County Collector, Appellee, *vs.* THE ORRINGTON COMPANY, Appellant.

*Opinion filed April 17, 1935.*

WHITE & HAWXHURST, and ALLEN E. HOBAN, for appellant.

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, and JACOB SHAMBERG, of counsel,) for appellee.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

At the November term, 1933, of the county court of Cook county the county treasurer and *ex-officio* collector made application for judgment and order of sale for delinquent taxes, including back taxes for the years 1928, 1929 and 1930 extended on the 1931 tax rolls against the property of the appellant corporation, the Orrington Company. Prior to 1933 the premises were assessed as "leasehold estate and improvements." The back taxes were based on the omission to assess the fee. Appellant filed objections to the taxes on the ground that it acquired title to the property on August 4, 1933, and that the assessment

was void under section 278 of the Revenue act of 1872, which provides that no "charge for tax and interest for previous years * * * shall be made against any property prior to the date of ownership of the person owning such property at the time the liability for such omitted tax was first ascertained." Appellee paid, "under protest," $5260.50, or seventy-five per cent of the taxes levied against its property, and filed with its objections the collector's duplicate receipt therefor. The 1931 taxes were paid and are not now involved. Judgment was entered sustaining the objections to the taxes but denying objector's petition for the return of the amount paid under protest. The objector has appealed from the portion of the judgment which denied the refund. The correctness of the judgment in sustaining the objections to the taxes is not challenged by appellee.

By an amendment of May 18, 1933, to section 191 of the Revenue act of 1872, (Smith's Stat. 1933, chap. 120, par. 179, p. 2387,) relating to judgments for delinquent taxes, it is provided that no person shall be permitted to offer any defense to the entry of judgment unless the objections "shall be accompanied by an official original or duplicate tax collector's receipt, showing that at least seventy-five per cent of all taxes to which objection is made have been paid under protest pursuant to the provisions of section 162 of this act; and it shall be the duty of all tax collectors to furnish such duplicate receipts without charge. If any party objecting to any tax paid under protest is entitled to a refund of the amount, or any part thereof, so paid under protest, the court shall enter judgment accordingly." Before the 1933 amendment the statute contained no such provisions.

Prior to its amendment on May 18, 1933, the pertinent portion of section 162 read: "The collector shall accept payment for any installment of any one or more of the taxes levied by the various taxing authorities which form the aggregate of all the taxes levied on any lot, piece or

parcel of land charged with taxes, or on a part of an undivided share thereof, * * * in all cases where the person paying the tax shall specify in writing the particular tax or taxes to which the payment shall be applied." Immediately following this provision the amendatory act added the provision: "If any person shall desire to object pursuant to the provisions of section 191 of this act, to all or any part of any one or more of the taxes levied by the various taxing authorities which form the aggregate of all taxes levied on any lot, piece or parcel of land charged with taxes, or on a part or an undivided share thereof, he shall pay at least seventy-five per cent of the same under protest, specifying in writing the particular tax or taxes or part or parts thereof so paid and the receipt therefor shall be marked by the collector to show that such tax or taxes, or such part or parts thereof as the party paying the same shall so specify, was paid under protest and the collector shall enter the fact of such protest in his return." Appellant complied with the foregoing provisions of the statute when making its payment under protest, and contends that it is entitled to a return of the amount paid by reason of the provisions of the amendment to section 191, and for the further reason that the payment was involuntary. Appellee insists that the payment was voluntary under a mistake of law and cannot be recovered.

Prior to the amendments above set out we held that a payment made to prevent the sale of real estate for an illegal tax is not under compulsion but must be regarded as voluntary (*School of Domestic Arts* v. *Harding,* 331 Ill. 330; *Otis* v. *People,* 196 id. 542; *Walser* v. *Board of Education,* 160 id. 272;) even though made under protest. (*School of Domestic Arts* v. *Harding, supra.*) When those decisions were rendered there was no statute prohibiting the filing of objections to a tax without a prepayment of some part thereof, but any tax-payer might file objections without any restriction upon his right to

do so. Neither was there any statutory provision for the return of any portion of an illegal tax paid, and it could not have been recovered unless paid under duress. As to what constitutes duress, there has been a growing tendency to modify the earlier doctrine of the common law. We said in *Illinois Merchants Trust Co.* v. *Harvey*, 335 Ill. 284: "The authorities agree * * * that a payment made under compulsion or duress may be recovered. The application of this rule of law has not at all times been uniform. At the common law duress meant duress only of person, and nothing short of a reasonable apprehension of imminent danger to life, limb or liberty sufficed as a basis for an action to recover money paid. The doctrine became gradually extended, however, to recognize duress of property as a sort of moral duress, which, equally with duress of person, entitled one to recover money paid under its influence. To-day the ancient doctrine of duress of persons (later of goods) has been relaxed, and extended so as to admit of compulsion of business and circumstances.— *Illinois Glass Co.* v. *Chicago Telephone Co.* 234 Ill. 535." As further indicating the progress in relaxing the common law rule, we said in *Benzoline Motor Fuel Co.* v. *Bollinger*, 353 Ill. 600: "An examination of authorities in order to ascertain just what is necessary to constitute an involuntary payment of a tax because of duress discloses certain well settled legal principles which are applicable to and govern the decision in this case. It is not necessary that the party paying the tax be in physical danger, or that he be actually placed in a position that his property is about to be seized in satisfaction of the tax, or that his back be to the wall, so to speak."

The reason for relaxing, as far as possible, the ancient rule is apparent. The great body of tax-payers are uninformed as to the legality or illegality of many of the taxes imposed. Recovery of taxes paid on illegal assessments or levies was handicapped not only by precedent, but by the

fact that taxing authorities, in the absence of statutory provision, have no power to refund illegal exactions not paid under duress. (*LeFevre* v. *County of Lee,* 353 Ill. 30.) This was the situation prior to the protracted depression of the past few years, the most disastrous and far-reaching in history. Due to falling values and the disposition of many tax-payers to delay payment a chaotic condition in revenue collections resulted. This brought about concerted tax strikes by organized groups of tax-payers and the filing of blanket objections, which clogged the courts, delayed adjudications and severely impaired the functions of government in many counties, school districts and municipalities. Remedial legislation became a necessity. To meet the situation, the legislature in 1933 enacted the amendments to sections 162 and 191 of the Revenue act. The amendatory act states that the practice prevails of filing objections merely for the purpose of delay and that there is urgent need for a remedy.

The objectives of the amendments are manifest. They indicate a purpose to facilitate the collection of taxes and to protect the tax-payer, who is by law compelled to pay at least seventy-five per cent of the taxes objected to as a condition precedent to his right to file objections and to be heard in court. It is plain that the amendment to section 191 contemplates the refund of money whenever the tax objected to is held void and payment is shown to have been made under protest, as provided in said section. The provision for the refund is as mandatory as that for the payment. Appellee urges that the amendments apply only to rates, but no reason is advanced for the assertion and the context clearly refutes the claim.

It must also be observed that this legislation materially changed the situation with regard to the status of a tax-payer who desires to object to his taxes. It is to be presumed that the legislature knew the law as to voluntary payments. The amendatory act shows that when it took

away the right to object to taxes without restriction, it purposed to compensate the tax-payer for the imposition of an advance payment by a provision for a refund of any illegal tax so advanced. In the exercise of its legislative function the General Assembly had the right to so provide, regardless of whether the payment is deemed to be voluntary or involuntary. *Fenske Bros.* v. *Upholsterers Union,* 358 Ill. 239.

The judgment of the county court is reversed and the cause is remanded, with directions to enter an order for the refund of the amount paid by appellant under protest.

*Reversed and remanded, with directions.*