1 Ill.2d 468 (1953)
115 N.E.2d 888
CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Appellant,
v.
E.W. THOMPSON, County Treasurer, Appellee.
Nos. 32963 and 32964.
Supreme Court of Illinois.
Opinion filed November 18, 1953.
*469 INGHRAM & DITTMEYER, of Quincy, and STEVENS, HERNDON & NAFZIGER, of Springfield, for appellant.
H. DAVID CONDRON, State's Attorney, and WILLIAM J. DIETERICH, both of Quincy, for appellee.
Affirmed in part and reversed in part, and remanded.
Mr. JUSTICE DAILY delivered the opinion of the court:
Appellant, the Central Illinois Public Service Company, having previously paid its taxes for the years 1950 and 1951 in full, though partially under protest, filed separate petitions in the county court of Adams County seeking the return of $27,313.50 paid under protest for 1950, and of $31,412.63 paid under protest for 1951. The basis for both protests was that the amounts objected to represented illegal, unauthorized and void taxes extended against appellant's property; the subsequent petitions set forth the allegations of invalidity in detail. In each case, the county court entered an order which allowed some of the refunds sought, but denied others, and appellant now prosecutes separate appeals from the portions of the orders denying relief. Inasmuch as identical issues appear in each appeal, *470 we have, on motion of the parties, consolidated the causes for review.
The county's budget and annual appropriation ordinance pertaining to 1950 taxes contained, under amounts to be levied for general county purposes, items totalling $9075 for expenses of the "Office of the Supervisor of Assessments," an office created in 1949 when the sixty-sixth General Assembly enacted House Bill No. 663 into a law. (Laws of 1949, p. 1261.) Appellant seeks to recover the amounts levied for, and applied to, the payment of these items, contending that the county was without authority to appropriate funds or to levy taxes for such expense, for reason that the law creating the office of supervisor of assessments was found to be unconstitutional and void in Giebelhausen v. Daley, 407 Ill. 25. (Opinion filed September 21, 1950  Rehearing denied November 17, 1950.) Appellant argues that any authority in the county to tax for this purpose must have emanated from this law and that the subsequent finding that it was unconstitutional puts the county in the position of never having had authority to tax for the expenses of the office. For this reason it is urged that the county court erred in denying a refund of the amount of the tax extended against appellant's property.
The county collector concedes that the act establishing the office has been found unconstitutional but argues that it does not follow that everything done pursuant to the act is invalid, particularly when, as here, the office was established and performed its services and the county, in good faith, became liable for the expenses of the office. In support of his position that the void taxes extended for this purpose need not be refunded, the collector relies upon the broad principle that absolute retroactive invalidity is not always justified. Appellant insists that grants of power to levy taxes require strict construction in all that tends to protect the taxpayer and that, the grant of power being unconstitutional and void, the tax itself is void.
*471 We find that prior to 1933, in cases which embrace real estate, personal property, privilege and other types of taxes, this court consistently followed the majority rule that a voluntary payment of taxes made under a mistake of law, but with full knowledge of the facts, could not be recovered even though paid under protest. This was true even where the taxes paid were based upon a statute subsequently found to be unconstitutional. (See: Yates v. Royal Ins. Co. 200 Ill. 202; Walser v. Board of Education, 160 Ill. 272; Otis v. People ex rel. Raymond, 196 Ill. 542; Board of Education v. Toennigs, 297 Ill. 469; School of Domestic Arts and Science v. Harding, 331 Ill. 330; Richardson Lubricating Co. v. Kinney, 337 Ill. 122; Standard Oil Co. v. Bollinger (two cases), 337 Ill. 353, and 348 Ill. 82; 48 A.L.R. 1381; 74 A.L.R. 1301.) The issue in many of the cited cases resolved itself into a question of whether the payment of the invalid tax had been voluntary or involuntary, and it was held that a payment made under pressure of process immediately available to enforce collection was not a payment under compulsion but a voluntary payment. In People ex rel. Sweitzer v. Orrington Co. 360 Ill. 289, it is pointed out that such rigid rules were necessary, at least insofar as they were applied to real property taxes, for the reason that there was no statute prohibiting the filing of objections to a tax without a prepayment of some part thereof, nor a statutory provision which allowed a recovery of taxes not paid under duress. As a practical matter, it appeared that numerous taxpayers filed objections merely to delay payment as long as possible, with the result that courts were clogged with tax matters and the taxing bodies were constantly harrassed by their lack of the funds so tied up.
In 1933, the legislature amended certain sections of the Revenue Act of 1872 and, by section 162 thereof, made a formal protest and payment of seventy-five per cent of real-property taxes as a condition precedent to the recovery *472 of taxes paid under protest. (Laws of 1933, p. 912.) Other amendments permitted said taxes to be repaid if their invalidity was established. The amendments referred to came before this court in 1935 in People ex rel. Sweitzer v. Orrington Co. 360 Ill. 289, where the court had this to say: "The objectives of the amendments are manifest. They indicate a purpose to facilitate the collection of taxes and to protect the tax-payer, who is by law compelled to pay at least seventy-five per cent of the taxes objected to as a condition precedent to his right to file objections and to be heard in court. It is plain that the amendment to section 191 contemplates the refund of money whenever the tax objected to is held void and payment is shown to have been made under protest, as provided in said section. The provision for the refund is as mandatory as that for the payment. Appellee urges that the amendments apply only to rates, but no reason is advanced for the assertion and the context clearly refutes the claim. It must also be observed that this legislation materially changed the situation with regard to the status of a tax-payer who desires to object to his taxes. It is to be presumed that the legislature knew the law as to voluntary payments. The amendatory act shows that when it took away the right to object to taxes without restriction, it purposed to compensate the tax-payer for the imposition of an advance payment by a provision for a refund of any illegal tax so advanced. In the exercise of its legislative function the General Assembly had the right to so provide, regardless of whether the payment is deemed to be voluntary or involuntary. Fenske Bros. v. Upholsterers Union, 358 Ill. 239."
Following the opinion in the Orrington case, the legislature, in 1937, further amended the Revenue Act by adding thereto section 162a, which makes a formal protest and payment of all personal property taxes a condition precedent to the recovery of taxes paid under protest, provides for petition and hearing in the county court, and directs *473 that the court "shall pronounce judgment as the right of the case may be, and if the court finds for the petitioner, it shall enter judgment directing the County Collector to return to the petitioner all or a proper part of the personal property taxes paid under protest." (Laws of 1937, p. 1049.) It is this section upon which appellant's petition for refund is based. Ill. Rev. Stat. 1949, chap. 120, par. 676.
When the chronology of the legislation and the Orrington Co. case is considered, we think it manifest that the legislature, in adding section 162a to the Revenue Act, intended thereby to protect those who wished to protest against their personal property taxes from the rigid rules which had attached to voluntary payment and to compensate them for having to pay an illegal tax in advance by providing a definite manner and right of refund. As was observed in the Orrington case, the provisions of the statute providing for a refund are just as mandatory as those requiring an advance payment. For this reason, therefore, we hold that we are precluded from any consideration of whether the admittedly void taxes complained of were nonetheless justified. Appellant has fully complied with the statute and the record shows that the authority from which the county gathered its power to levy for the expenses of the office of supervisor of assessments has been held to be unconstitutional and void. We believe that the statute, which was designed to prevent promiscuous and dilatory filing of tax objections as well as to provide some measure of protection to those who were public spirited enough to pay their taxes, was intended to apply to the exact situation of this case. It is our conclusion that the trial court erred in denying a refund of the taxes levied for the expenses of the office.
Next to be attacked by appellant are taxes extended both in 1950 and 1951 for tuberculosis sanitarium purposes. The pertinent facts show that in August, 1946, the board of supervisors adopted a resolution, as required by section *474 27 of the Counties Act, (Ill. Rev. Stat. 1945, chap. 34, par. 27,) providing for the levy of an additional tax for tuberculosis sanitarium purposes, said additional tax to be in excess of the maximum statutory rate for county purposes and for a period of ten years. Further, in compliance with section 27, the resolution stated that the excess required would be substantially the sum of $50,000 per year and resolved that an annual tax not to exceed a rate of .075 per cent should be authorized to provide for the payment of the additional amount. The people of the county voted favorably on the proposition when it was submitted to them at an election held November 5, 1946, and authorized the additional tax for a period of ten years at a rate not to exceed .075 per cent.
In 1950 and 1951, rates were extended which produced the sums of $63,100 and $78,389, respectively. Although it appears that the rates extended did not exceed that authorized by the voters, appellant, contending that the resolution of the board estimating the amount of the excess needed is the basis of the grant of power to extend the additional rate, alleges that the amounts produced for those years in excess of $50,000 are illegal and void. In making this contention, appellant recognizes that the board's resolution stated that $50,000 would be "substantially" the amount needed and admits that it was within the authority of the county to raise moderate amounts over $50,000. It submits, however, that the excesses complained of constitute more than a substantial difference from the estimate and are thus beyond the extent of the county's power.
Appellant's argument that the amounts in excess of the estimate of the resolution are invalid is bottomed generally upon numerous cases, such as People ex rel. Hargrave v. Baltimore and Ohio Railroad Co. 394 Ill. 471, which hold that the provisions of section 27 providing for authority to levy an additional tax must be construed strictly when examined from the standpoint of the county's power, and *475 be construed liberally with reference to the protection of the taxpayer. Specifically, appellant relies upon Peoria and Pekin Union Railway Co. v. People ex rel. Knupp, 198 Ill. 318, as authority for the proposition that the amount stated by the resolution of the board fixes the amount of tax that may be extended. In the Peoria case, the preamble to the board's resolution recited that the statutory rate of taxation had been insufficient to meet the county's expenses and that the county then had a floating debt which amounted to "about" $100,000. It was resolved that an additional tax be levied until a sufficient amount was raised to meet the indebtedness of the county, and, at a subsequent election, the voters of Peoria County voted affirmatively "To levy an additional tax of not to exceed two and one half mills on the dollar per annum, until a sufficient amount is raised to meet the indebtedness of the county." Under this authority, additional taxes were levied and collected for the years 1897, 1898 and 1899 in the aggregate of $115,848.56. In 1900, the county attempted to levy for approximately another $16,000 under the same authority and, when it was objected to, contended that it was within its power because the county's indebtedness, at the time the board adopted its resolution, was actually $132,000. In finding against the county, this court recognized the applicable rules of construction and, after stating that $132,000 could not be considered a near approximation of $100,000, nor an excess of $32,000 a moderate one, held that the resolution involved, "being the basis of the grant of power to exact taxes in excess of the constitutional limitation, cannot be construed to authorize the further exercise of such taxing power after levies made under it had resulted in the payment by the taxpayers of the sum of $15,000 and more in excess of the said sum of $100,000 specified in the resolution." It further appears that the court's finding that the taxing power under the resolution was exhausted was to some extent based upon the court's conclusion that *476 the voters would understand the proposition voted on the ballot to mean that the proposed excess rate was to be levied only until a sufficient amount was produced to meet the $100,000 indebtedness specified in the resolution.
While we are in accord with the result reached in the Peoria case and agree that taxes authorized by section 27 must be levied and collected in accordance with the terms of the board's resolution, we find there are factual and statutory dissimilarities in the present case which preclude us from placing the same construction on the board's estimate. The board in this case fully complied with the provisions of section 27, as did the board in the Peoria case, and the issue presented, as we view it, is whether the amounts levied for tuberculosis sanitarium purposes in 1950 and 1951, can be said to fall within what the statute terms as "substantially the amount of such excess required." In the Peoria case, relied upon by appellant, the tax increase was needed and was voted, pursuant to a resolution of the board which stated an approximate amount, for the purpose of retiring a fixed indebtedness. Section 27 did not then require the resolution to state the number of years the excess would be required to be levied, (Hurd's Stat. 1899, chap. 34, par. 27,) nor did the board attempt so to do. Instead, they sought only the extension of a rate in excess of the maximum limit until such time as the county's indebtedness was paid and this was the extent of the notice given to the voters and was the only power they voted to authorize. The condition and amount of tax was thus fixed and definite when the board adopted its resolution and when the proposition was submitted to the voters. The facts of the case demonstrate that the estimate of the board was the sole criterion for determining the limit of the county's authority and, since that estimate dealt with a fixed or existing indebtedness, it follows that a strict construction of it was necessary. Further, in this regard, it should be noted that although the Peoria board was dealing *477 with a tax to pay a fixed and determinable sum, no reason was shown, or suggests itself, as to why the exact amount of the indebtedness was not stated and the voters so notified. That this feature influenced the court's decision is shown by its comment that the voters would understand the proposition voted upon to mean that they were authorizing a levy of an excess rate to meet indebtedness in the amount specified in the resolution.
In the present case, the Adams County board was not dealing with a tax for a fixed or existing debt but was confronted with providing payment for the continuing operation of a governmental agency for a future period of years. As required by the current provisions of section 27, (Ill. Rev. Stat. 1945, chap. 34, par. 27,) the board made an estimate of substantially the amount of excess annually required and fixed at ten the number of years such excess would be required to be levied. The statute itself recognizes that the amount of excess will vary from year to year, because it calls only for an estimate of substantially the amount needed each year and the voters were apprised of this fact by notice couched in the terms of the statute. Of necessity, therefore, the amount and condition of the tax was not fixed and definite when the board adopted its resolution or when the proposition was submitted to the voters. Nor were the circumstances under which the proposition was submitted to the voters subject to an interpretation that the power to levy the excess tax would be exhausted when the figure named in the board's resolution was reached. We do not, therefore, believe that the estimate of the board in this case must receive the same construction given the estimate in the Peoria case.
While we recognize and respect the principles of statutory construction which tend to protect the taxpayer, the great object of all principles of construction is, as observed by appellee, to discover the true intention of the law. In determining whether the $61,360 collected in 1950 and the *478 $78,389 collected in 1951, substantially approximates the estimate of $50,000, within the meaning of the statute, we believe it is significant that the legislature has not required that the amount needed be stated as a sum certain, and also that the requirement of the statute is only for a substantial estimate of the annual excess rather than an estimate of the aggregate excess for the number of years it will be required. These features, we submit, demonstrate a legislative awareness that increased costs and expenses from year to year would cause a rise or fall in the amounts of the excess needed and an intention that such amounts be included within what the legislature termed "substantially the amount of such excess required." We may take judicial notice in this case of the economic reality that prices, wages and costs have increased steadily and materially since the board made its estimate in 1946. It is also within the realm of common knowledge that medical research is constantly producing new methods of treatment which necessitate new equipment, technicians and drugs which oftentimes increase the costs of medical care. It is possible too that the amount of excess needed would fluctuate from year to year in direct relation to the number of persons requiring sanitarium treatment. We are of the opinion that the formula and language employed by the legislature in providing a means by which county authorities could obtain tax funds to meet excessive expenses of government, contemplates that emergencies and economic pressures, such as referred to, would directly affect the amount of excess taxation required, no matter what governmental function may be involved. Therefore, as applied to an excess tax for tuberculosis sanitarium purposes, it is our conclusion that the provision of section 27 for an estimate of "substantially the amount of such excess required" was intended to be sufficiently elastic to embrace such involuntary increases in the excess required.
*479 The conclusion reached must, however, be qualified by the limitation that the excesses justified cannot exceed amounts which may be produced by the rate of tax authorized by the voters. In this case the taxes produced in both 1950 and 1951 were produced by the extension of a rate within the tax rate approved by vote of the people and, in the absence of any showing to the contrary, it is to be presumed that the amounts realized are being applied only to the purposes for which they were levied. Appellant urges that the tax rate is fixed only with a view that it be sufficient to produce the maximum amount fixed by the resolution even though there should be, during the stated years, a substantial shrinkage in values, and insists that the tax rate is of no significance in construing the estimate of the board. The rate proposed by the board is an integral part of their resolution, however, and it is logical to assume that it is likewise designed to be sufficient to produce the fluctuating amounts of excess required. We hold that the county was possessed of authority to levy for the excess complained of and that the trial court properly refused their refund.
Appellant next contends the court erred in denying a refund, for the years 1950 and 1951, of such taxes for the maintenance and operation of the County Health Department as were produced by rates extended in excess of the maximum statutory limit for general county corporate purposes. It is appellant's position that the county was without authority to levy a tax in excess of statutory limit without first complying with section 27 of the Counties Act. Ill. Rev. Stat. 1949, chap. 34, par. 27.
Section II of the County Public Health Departments Act (Ill. Rev. Stat. 1949, chap. 111 1/2, par. 20c10,) authorizes that: "The county board of any county which has established and is maintaining a county or multiple-county health department shall, when authorized as provided in *480 Sections 2, 3, or 4, levy annually therefor, in excess of the statutory limit, a tax of not to exceed .05 per cent" etc. It is admitted that the Adams County health department was formed in compliance with section 2 of the act (Ill. Rev. Stat. 1949, chap. 111 1/2, par. 20c1,) and that, when the issue was put to the voters in the form of ballot prescribed by the section, a majority voted "yes" to the following proposition: "Shall Adams County establish and maintain a health department and levy therefor, in excess of the statutory limit, an additional annual tax of not to exceed I mill on the dollar?" Appellant contends that the language of this statute is to be construed as that relating to the taxes provided for (I) in the Non-Sectarian Hospital Act, (Ill. Rev. Stat. 1949, chap. 34, pars. 175.31 to 175.33,) which this court had under consideration in People ex rel. Harrell v. Baltimore and Ohio Railroad Co. 411 Ill. 55; (2) in the Airports and Landing Fields Act, (Ill. Rev. Stat. 1949, chap. 15 1/2, pars. 84 to 103,) which was considered in People ex rel. Downs v. Scully, 408 Ill. 556; and (3) in the County Tuberculosis Sanitariums Act, (Ill. Rev. Stat. 1949, chap. 34, pars. 164 to 17519,) which this court has treated upon innumerable times between the decisions of People ex rel. Graff v. Wabash Railway Co. 286 Ill. 15, and People ex rel. Walsh v. Illinois Central Railroad Co. 409 Ill. 522. As was pointed out under similar circumstances, in People ex rel. Bracher v. Millard, 307 Ill. 556, (pp. 573-574,) in the acts referred to the language of the statute only gives the taxing authorities power to levy a tax in addition to the tax for general county purposes and such language has been consistently construed by this court to mean that although the taxes provided for are in addition to the taxes authorized to be levied for general county purposes they may not be levied in excess of the limitation fixed by law unless authorized pursuant to the provisions of section 27 of the Counties Act, or unless the statute by its terms exempts the additional tax *481 from the provisions of section 27. The authority granted by sections 2 and 11 of the County Health Departments Act is substantially broader than that contained in the statutes relating to hospitals, airfields and sanitaria, for not only is authority given to levy a tax in addition to the tax for other county purposes, but authority is also given to levy such tax in excess of the statutory limit. Comparable language has been construed by this court to confer authority, without more, to levy taxes in addition to maximum statutory rates. People ex rel. Bracher v. Millard, 307 Ill. 556; People ex rel. Dooley v. New York, Chicago and St. Louis Railroad Co. 368 Ill. 536.
Still another reason exists as to why the provisions of section 27 have no application to the tax in excess of the statutory limit authorized by the County Health Departments Act. The provisions of the latter statute demonstrate that it is complete in itself and is in no way dependent upon another statute for its operation. It authorizes the establishment and maintenance of a health department, provides for an additional tax, fixes the limit of tax which can be levied, provides that the rate of tax may be in excess of the statutory limit and provides that it may be levied annually until the act is abandoned in the manner set forth. It is, therefore, a special act passed for one purpose, and a vote of the people authorizing a tax in excess of the statutory limit makes it a valid tax under its own terms. (People ex rel. Flick v. Chicago, Burlington and Quincy Railroad Co. 291 Ill. 502.) As was observed in the case last cited, where an excess tax for a detention home was being considered, section 27, which is a provision in a general act, has nothing to do with the levy of the tax authorized by a complete and special statute. The county board does not, of its own initiative submit this tax to the people as it does taxes to be voted under section 27, the propositions being voted upon under the County Health Departments Act being submitted by petitions of the registered *482 voters. Since the latter act is a special one, complete in itself, its provisions must prevail over the general provisions of the Counties Act (County of DeWitt v. Greene, 320 Ill. 491,) and the trial court properly held that the failure to comply with the provisions of section 27 did not render the health department taxes invalid.
For the reasons stated, the orders of the county court of Adams County are affirmed, with the exception of that portion of the order pertaining to 1950 taxes which denied a refund of the taxes levied for the expenses of the office of the supervisor of assessments. As to that portion, the order is reversed and the cause remanded to the county court with directions to enter an order for the refund of the amount paid by appellant under protest.
Affirmed in part and reversed in part and remanded, with directions.