CINCH MANUFACTURING COMPANY, Petitioner, v. EDWARD J. ROSEWELL, County Treasurer and *ex officio* County Collector of Cook County, *et al.*, Respondents-Appellees (Commonwealth Edison Company, Petitioner-Appellant).

First District (4th Division)    No. 1—94—3333

Opinion filed December 7, 1995.

Keck, Mahin & Cate, of Chicago (Thomas J. McNulty and David S. Martin, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Patricia M. Shymanski, Mary T. Nicolau, and Marie E. Smuda, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The petitioner, Commonwealth Edison Company (Edison), appeals from the trial court's denial of a motion to amend its petition for a return of personal property taxes paid under protest. The trial court found that 13 articles of personal property in dispute were not part of a timely filed petition and therefore it lacked jurisdiction to permit the amendment. Edison appeals, alleging that the trial court erred in denying its proposed amendment. We affirm.

The county clerk of Cook County extended personal property taxes levied by Cook County taxing bodies, including the City of Chicago (City) and the County of Cook (County), for the 1978 tax year. Nine hundred thirty-seven (937) personal property tax bills were issued to Edison for that tax year on items of personal property owned by it and located in Cook County. In accordance with section 195 of the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 676 (repealed by Pub. Act 81—1st Spec. Sess.—1, § 11, eff. December 31, 1982)), Edison paid all 937 tax bills in full and under protest.

On February 6, 1980, Edison and Cinch Manufacturing Company (Cinch) filed one petition pursuant to section 195 (Ill. Rev. Stat. 1979, ch. 120, par. 676) seeking the return of personal property taxes paid under protest for the 1978 tax year. Attached to that petition was "Schedule A," listing 924 items of personal property owned by Edison and one item owned by Cinch.

Edison and other tax objectors later entered into settlement agreements with many of the taxing bodies involved. The agreements

included all of Edison's perfected tax objections on personal property for 1978. The settlement agreement between Edison and the City, entered into on June 15, 1987, provided that it "shall be in total settlement for all taxes payable by the City to the Objectors based on their objections filed against the City's property tax levies for the Settlement Period." Pursuant to the settlement agreement with the City, the trial court entered a "Final Pronouncement Order" on August 3, 1987, and incorporated the agreement into the order. In the order, the court found that the county collector made a *prima facie* case on its application for judgment. The court sustained all timely filed objections to the 1978 taxes levied by the City to the extent of $.020 per $100 of equalized assessed valuation and overruled the objections in all other respects. The order stated that the trial court retained jurisdiction to enter refund orders consistent with the pronouncement order and the provisions of the settlement agreement.

On January 30, 1989, Edison and the County filed a written settlement agreement with the trial court settling the objections to the 1978 personal property taxes. The County was the last taxing body to settle these objections. Pursuant to this settlement agreement, the trial court entered a "Final Pronouncement Order" on March 8, 1989, in substantially the same form as the pronouncement order entered as a result of the settlement with the City except that it did not specifically incorporate the settlement agreement and it sustained the objections to the extent of $.015 per $100 of equalized assessed valuation.

Subsequently, on February 1, 1990, the Cook County treasurer sent Edison a computer printout of "the 1978 Personal Property Illegal Rate refund" and requested that Edison check the list for errors. After checking the printout, Edison discovered that, due to a clerical error on its part, 13 items of personal property had been omitted from "Schedule A" of its tax objection petition even though the taxes on those items had been paid in full under protest. On July 30, 1990, Edison filed a motion to amend its petition to include the 13 omitted items. The City and the County opposed the motion to amend.

After a hearing, the court denied Edison's motion to amend, finding that it did not have jurisdiction to amend or modify the final pronouncement order because the motion to amend was not filed until a year and a half after the order was entered. After its motion to reconsider was denied, Edison filed a notice of appeal.

On appeal, this court found that the trial court had jurisdiction to consider Edison's motion to amend because the pronouncement order, although labelled "final," was not a final order because the court

did not determine the amount of the refund. (*Cinch Manufacturing Co. v. Rosewell* (1993), 255 Ill. App. 3d 37, 41, 627 N.E.2d 276, 279.) Because Edison appealed from a nonfinal order, we dismissed the appeal for lack of appellate jurisdiction.

The trial court subsequently denied Edison's motion to amend on August 26, 1994, finding that its failure to include the 13 items of personal property in the initial petition was a jurisdictional defect under section 195 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 676). The trial court noted that the defect could not be cured by amendment, since the statute required the petition to be filed within one year from the date of the taxes being paid under protest and Edison had filed its motion to amend more than 10 years after paying the taxes under protest. In addition, the court found that Edison had settled its tax objections with the County and the City in good faith and could not seek a modification of that settlement.

The court entered judgment for a refund of $117,532.65 on August 31, 1994. After Edison's motion to vacate was denied, it filed this appeal.

■ Section 195 of the Revenue Act of 1939 provided that any person paying taxes under protest "may file a petition in the circuit court for the county where the payment under protest was made, praying for the return of all or any part of the personal property taxes so paid under protest." (Ill. Rev. Stat. 1979, ch. 120, par. 676.) The form of the written protest was set forth in section 195 and required inclusion of the tax collector's warrant book volume and item number of the personal property involved. Section 195 also provided that if a petition was not filed within one year of paying the taxes under protest, "the protest shall be deemed abandoned and the county collector shall distribute the moneys so withheld to the various taxing bodies entitled thereto." Ill. Rev. Stat. 1981, ch. 120, par. 676.

■ Edison is correct in its assertion that the right to amend in a tax objection proceeding is governed by the same rules as ordinary pleadings. (*People ex rel. Harris v. Chicago & North Western Ry. Co.* (1956), 8 Ill. 2d 246, 249, 133 N.E.2d 22, 24.) Section 195 specifically provided: "[T]he process, practice and procedure with reference to the petition shall be the same as in other civil cases." (Ill. Rev. Stat. 1981, ch. 120, par. 676.) But the question before this court is not whether, conceptually, a petition for a refund of personal property taxes paid under protest can be amended; rather, we are called upon to determine whether, as a matter of law, a taxpayer may amend its petition more than one year after the payment of taxes under protest

when the purpose of the amendment is to include in the petition, for the first time, a prayer for a refund of taxes paid under protest on items of personal property not listed in the original petition. For the reasons which follow, we agree with the trial court and conclude that no such amendment is allowable.

■ Prior to 1937, a taxpayer had no right to seek a refund of any taxes paid, even when the tax was determined to be in violation of law. The only exception to this rule related to taxes paid under duress. (*People ex rel. Sweitzer v. Orrington Co.* (1935), 360 Ill. 289, 292, 195 N.E. 642, 643.) Under common law, duress meant "duress only of person, and nothing short of a reasonable apprehension of imminent danger to life, limb or liberty sufficed as a basis for an action to recover money paid." (*Illinois Merchants Trust Co. v. Harvey* (1929), 335 Ill. 284, 289, 167 N.E. 69, 71.) Although this doctrine was gradually relaxed, a payment made under pressure of process immediately available to enforce collection was not a payment under compulsion but rather a voluntary payment. *Central Illinois Public Service Co. v. Thompson* (1953), 1 Ill. 2d 468, 471, 115 N.E.2d 888, 890.

■ In 1933, the Illinois General Assembly amended certain sections of the Revenue Act of 1872 to require a taxpayer objecting to a tax to pay a specified portion of the tax under protest as a condition precedent to his right to dispute the tax and seek a refund. (*Orrington*, 360 Ill. at 290-91, 195 N.E. at 643-44.) Our supreme court has noted that the amendments to the Revenue Act which provided taxpayers the right and the means to receive a refund for personal property taxes voluntarily paid under protest were intended to "protect those who wished to protest against their personal property taxes from the rigid rules which had attached to voluntary payment and to compensate them for having to pay an illegal tax in advance by providing a definite manner and right of refund." (*Thompson*, 1 Ill. 2d at 473, 115 N.E.2d at 891.) Thus, the provisions of the statute providing for a refund are just as mandatory as those requiring an advance protest payment. (*Thompson*, 1 Ill. 2d at 473, 115 N.E.2d at 891.) "The obligation of a citizen to pay taxes is a purely statutory creation and, conversely, the right to a refund or credit can arise only from the acts of the legislature." *Jones v. Department of Revenue* (1978), 60 Ill. App. 3d 886, 889, 377 N.E.2d 202, 204.

■ Section 195 was part of a comprehensive statutory scheme that not only provided the taxpayer with a means to obtain a refund of personal property taxes, but also contained its own special limitations period for the filing of such a petition. (Ill. Rev. Stat. 1981, ch. 120, par. 676.) Section 195 stated that the petition may be filed "[a]t any time within one year from the date of paying personal property

taxes under protest." (Ill. Rev. Stat. 1981, ch. 120, par. 676.) When a right of recovery is purely statutory in origin, and the act which creates the right also sets the limitations period, compliance with the limitation is a condition precedent to the plaintiff's right to seek a remedy under the act. (*Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209, 486 N.E.2d 893, 895; see also *Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 6-7, 440 N.E.2d 112, 115.) When a given time period is a condition precedent to the plaintiff's right to seek a remedy, the time period is jurisdictional. (*Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362, 367, 534 N.E.2d 544, 547.) The one-year limitation contained in section 195 was such a jurisdictional prerequisite to a taxpayer's right to seek a refund of personal property taxes paid under protest.

In this case, our task is to determine whether the filing of Edison's original petition satisfied the one-year limitations period for seeking a refund on all or any part of the personal property taxes paid by Edison under protest for tax year 1978, or only for all or any part of the taxes paid under protest on the items listed in "Schedule A" attached to that original petition. For our resolution of the question, we look first to the language of the statute.

Section 195 mandated that a taxpayer wishing to contest personal property taxes because of illegal tax rates (1) "pay the same under protest *** accompanied by 2 copies of *a written protest*," and (2) "within one year from the date of paying ***[,] file a petition in the circuit court *** praying for the return of all or any part of the personal property taxes so paid under protest." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 676.) The section went on to provide that "[i]f no such petition [was] filed within such time, *the protest* shall be deemed abandoned and the county collector shall distribute the moneys so withheld to the various taxing bodies entitled thereto." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 676.) In context, the phrase "the protest" as contained in the quoted portion of the statute is synonymous with "a written protest" accompanying the payment of personal property taxes under protest. This construction is mandated by the provisions of section 195 which directed the various town collectors "[to] receipt one copy of *the protest* *** and *** retain the other copy." [(Emphasis added).] (Ill. Rev. Stat. 1981, ch. 120, par. 676.) The section went on to direct the town collectors to deliver all of the copies of the protests filed with them, along with all of the moneys paid under protest, to the county collector. As indicated, if a petition seeking a refund was not filed within one year of the payment under protest, *the protest* was deemed abandoned and the county collector was directed to distribute the withheld moneys

to the taxing bodies entitled thereto. If such a petition was filed, the county collector continued to hold the protested tax payments pending the court's judgment. It was only by being named as a defendant and served with a copy of the refund petitions that the county collector could be advised as to which of the filed protests were being pursued by the taxpayers and which were to be deemed abandoned, and which of the withheld moneys the collector was required to distribute and which he was to continue to withhold.

Nothing in the statute under consideration prohibited a taxpayer from including multiple items of personal property within a single written protest. The only requirement was that the written protest contain the volume and item numbers of each of the items involved. Additionally, nothing in the statute prohibited a taxpayer from filing more than one written protest. The record in this case reveals that on August 31, 1979, Edison paid, under protest, the personal property taxes levied against the 13 items which were the subject of its proposed amendment. Edison's payment of the taxes on these 13 items was accompanied by a single written protest which listed the volume and item number of each of these 13 items, and no others. The written protest that Edison filed upon the payment of the taxes on these 13 items was separate and distinct from any other written protest that it filed in relation to the items listed in its original petition for refund. And in order not to have *the protest* that it filed in relation to the taxes paid on these 13 items deemed abandoned, Edison was required to file a refund petition in the circuit court of Cook County on or before September 1, 1980.

There is no dispute that Edison filed its original petition in this case on February 6, 1980. There is also no dispute that "Schedule A" attached to that petition listed the volume and item numbers of 924 items of personal property on which Edison paid 1978 taxes under protest. But nowhere in that petition did Edison list any of the 13 items which were the subject of its proposed amendment or reference *the protest* that it filed in relation to the taxes paid on those items. Nonetheless, Edison argues that its original petition placed in controversy its right to a refund of all or any part of the 1978 personal property taxes that it paid under protest, including the taxes so paid on the 13 items which were the subject of its proposed amendment. We disagree.

■ The information contained within Edison's original petition allowed the Cook County collector to know that the protest(s) filed by Edison in relation to the 924 listed items had not been abandoned. In contrast, nothing contained within that petition informed the collector that *the protest* filed in relation to the 13 items in issue was being pursued. In fact, the contrary is true.

Paragraph four of the original petition filed in this action reads as follows:

"4. At the time of making said payments, each petitioner herein delivered to the defendant two copies of a written protest in substantially the following form:

* * *

Each of said protests was filled in to show the volume and item number of the tax bill and the amount paid under protest. *The several amount[s] paid under protest are set forth in Schedule 'A' opposite the name of the pertinent petitioners.* (Emphasis added). Each protest was duly signed on behalf of the petitioners herein. The defendant duly receipted and returned one copy of each protest to the person paying the taxes, which receipted protest petitioner will produce at the hearing of this cause or as this Court shall direct."

The emphasized language of paragraph four makes clear to us that the petition related to the protests filed in relation to the amounts paid under protest as set forth in "Schedule A," and no others.

Since the original petition filed by Edison in this action did not reference the 13 items in issue and Edison did not move to amend the petition within the statutory one-year filing period, *the protest filed in relation to those items was abandoned.* We conclude, therefore, that the trial court properly found that it lacked jurisdiction to permit Edison's proposed amendment. Further, having based our disposition in this matter on the jurisdictional issue, we need not address any of the other arguments raised by the parties.

Affirmed.

CAHILL and THEIS, JJ., concur.