(No. 43241.—

MARTIN OIL SERVICE, INC., Appellant, v. THE DEPART-
MENT OF REVENUE, Appellee.

*Opinion filed September 30, 1971.*

MARK H. BERENS, WM. BRUCE HOFF, Jr.,
ARTHUR S. ROLLIN, and WILLIAM A. GORDON, all of
Chicago, (MAYER, BROWN & PLATT, of counsel,) for
appellant.

WILLIAM J. SCOTT, Attorney General, of Chicago,
(FRANCIS T. CROWE and MORRIS S. BROMBERG,
Assistant Attorneys General, of counsel,) for appellee.

MR. JUSTICE WARD delivered the opinion of the
court:

Martin Oil Service, Inc., the plaintiff, is an Illinois
corporation engaged in the sale, wholesale and retail, of
petroleum products. It filed claims for credit for the
months of March, April, May, June and July of 1964 for
its various sales outlets in the State of Illinois, under the
Retailers' Occupation Tax Act, the Municipal Retailers'
Occupation Tax Act, and the County Retailers' Occupa-
tion Tax Act (hereafter referred to as the retailers'
occupation tax) for the amount of tax paid under a rule of
the Department of Revenue which required sellers of
gasoline to include the Federal gasoline tax in the base
upon which the retailers' occupation tax is computed. The

Department denied the claims, and the plaintiff sought administrative review in the circuit court of Cook County. The court affirmed the denial by the Department of Revenue, and this appeal was brought. We took jurisdiction on direct appeal under our then governing Rule 302(a) because the revenue is involved.

Martin operates two wholesale and 43 retail outlets in Illinois. In 1948, it was licensed by the United States as a "producer" of gasoline. Under that license it is required to remit to the Federal government a Federal gasoline tax on each gallon of gasoline it sells to a non-producer." (26 U.S.C. sec. 4081.) Thus, this tax becomes due when Martin sells to a consumer through its retail outlets or when it sells at wholesale to a non-producer retailer. During the period involved here, Martin, as a retailer in Illinois, was subject to the retailers' occupation tax on its retail sales in this State.

Prior to February 1, 1962, Martin deducted on its retailers' occupation tax returns an amount equal to the Federal gasoline tax that it had remitted to the Federal government on the gasoline it had sold at retail. This was permitted under the then existing regulations of the Illinois Department of Revenue. Although this regulation had been in effect since 1935, on January 10, 1962, the Department amended its regulations to prohibit such a deduction from the gross receipts from retail customers, on which receipts the retailers' occupation tax is based.

Martin undertook to persuade the Department to recall its amendment and while this effort was being made, that is, until April, 1964, Martin itself absorbed the increased retailers' occupation tax on all sales made through its retail outlets. At that time Martin began to pass on the burden of the tax to its consumer-customers at some of its stations. The claims here concern sales at stations where the tax was not passed on to the consumer purchasers.

The operative words of the Federal statute are:

"There is hereby imposed on gasoline sold by the producer or importer thereof, or by a producer of gasoline, a tax of four cents a gallon." (26 U.S.C. sec. 4081) A sale from a producer to another licensed producer is exempted from the tax. (26 U.S.C. sec. 4083) It is not disputed that the duty to remit the tax is on the producer.

Martin first contends that the legal incidence of the Federal gasoline tax is on the consumer-purchaser. If the legal incidence is indeed on the consumer-purchaser, the Federal tax is not to be included in "gross receipts" in the computation of the retailers' occupation tax. Ill. Rev.Stat. 1969, ch. 120 pars. 440; *American Oil Co. v. Mahin, Docket 43376.*

This question appeared before this court in 1936, when in *People v. Werner, 364 Ill. 594,* it was said that the legal incidence of the Federal gasoline tax rested on the producer. Martin, to avoid the force of *Werner,* argues that the legal incidence of the tax was there stipulated by the parties. It is true that *Werner* was decided on a stipulation of facts. We cannot find however, any suggestion that the question of the legal incidence of the tax was part of the stipulation. Rather it seems clear that this court's expression that the legal incidence of the tax rests on the producer was based on its analysis of the Federal statute.

As Martin points out at least one jurisdiction has taken a position opposed to *Werner.* The Supreme Court of Pennsylvania in *Tax Review Board v. Esso Standard Division of Humble Oil and Refining Co. 424 pa. 335, 227 A.2d 657, cert. denied, 389 U.S. 824, 19 L.Ed. 79* held that the legal incidence of the tax is on the purchaser-consumer. Decisions of two other States are read by Martin as supporting its thesis that the tax incidence is on the purchaser-consumer. It was held in *Standard Oil v. State (1937), 283 Mich. 85, 276 N.W. 908, and Standard Oil Co. v. State Tax Commissioner (1941), 71 N.D. 146, 299 N.W. 447,* that on sales from producer retailers to consumers the Federal gasoline and State sales taxes were

taxes that were to be simultaneoúsly imposed. Those courts concluded from this that the Federal tax should not be included in the "gross receipts" for the purpose of computing the State tax. Neither case considered the question of on whom the legal incidence of the Federal tax falls. We would observe that other coúrts have reached the same conclusion this court did in *Werner*. It was held in *Sun Oil Co. v. Gross Income Tax Divisionn, 238 Ind. 111, 149 N. E.2d 115,* by the Supreme Court of Indiana and in *State v. Thoni Oil Magic Benzol Gas Stations, Inc., 121 Ga.App. 454, 174 S.E.2d 224, aff'd 226 Ga. 883, 178 S.E.2d 173,* by the appellate court of Georgia that the legal incidence of the Federal tax rests upon the producer. The Supreme Court of Indiana relied importantly on *People v. Werner,* in its determination. We consider after reviewing these cases that *Werner* correctly judged that the incidence rests on the producer. The validity of this view can be illustrated by the consideration that if the tax is not paid by the producer, he is the only one from whom the government may seek to collect the tax. Significantly the statute does not impose any liability on the purchaser-consumer if the gasoline tax is not remitted by the producer. It is irreconcilable to say that the legal incidence of the tax is on the consumer-purchaser and to say that he is not liable for the tax. Referring to our decision in *American Oil Co. v. Mahin, 49 Ill.2d 199,* where we held that the incidence of the Illinois Motor Fuel Tax is on the consumer, we note that the statute there examined provides that the tax may be recovered from the consumer-purchaser if it has not been collected by the retailer.

It is urged by Martin that certain congressional references to the gasoline tax show it must be considered a tax whose incidence rests on the consumer. Exemplary of these is the President's Message to Congress May 17, 1965, Report of the House Ways and Means Committee on H.B. 8371 89th Congress First Session (1965) at 1070-71, in

which President Johnson said: "Reform of the excise tax structure will leave \*\*\* excises on alcoholic beverages, tobacco, gasoline, tires, trucks, air transportation (and a few other user charges and special excises) \*\*\*." (H.R.Doc. No.173, 89th Cong., 1st Sess. 3 (1965).) We consider the references to the tax as a "user tax" were not intended to be descriptive of the legal incidence of the gasoline tax. It is not disputed that the ultimate economic burden of the tax rests upon the purchaser-consumer. A practical nontechnical description of the tax as a "user tax" is explainable, consistently with the legal incidence of the tax being on the producer. The economic burden of the tax has no relevance to the issue before us. *Fischman & Sons, Inc. v. Department of Revenue, 12 Ill. 2d 253.*

So far as the Federal legislative intendment is concerned, it is relevant to notice that a reference of greater and persuasive significance to the incidence of the tax is found in Senate Report No.367, a report of the Committee of Finance relative to the Federal–Aid Highway Act of 1961. (U.S. Code Congressional and Administrative News, vol.2, 87th Congress, 1st Session, 1961.) The report, which contains a recommendation by the committee that the gasoline tax be continued at the rate of four cents per gallon, states: "Under present law the Federal tax on gasoline is imposed on the producer, importer or wholesale distributor of the gasoline and is payable shortly after he makes its sale."

Another contention of Martin is that because amendments to the gasoline statute provide that certain consumers of gasoline can secure refunds of the gasoline tax paid, it must have been the legislative intent that the consumer-purchaser would bear the legal incidence of the tax. It is pointed out that in *Chicago Motor Club v. Kinney, 329 Ill. 120,* the court said that a tax refund to a person who has not directly or indirectly paid the tax would be unconstitutional, and thus, Martin argues, as

certain consumers can secure a refund, the incidence of the tax must be on the consumer-purchaser.

We consider that the argument has only superficial validity when measured against the very convincing evidence of a contrary legislative intention, including the statement of the Committee on Finance that the Federal gasoline tax was imposed "on the producer, importer or wholesale distributor of the gasoline." The amendments upon which Martin relies provide that the purchaser-consumer can obtain payment in full of the Federal gasoline tax, that is, four cents per gallon, if the gasoline has been used on a farm for farming purposes (26 U.S.C. sec. 6420(a)) and half of the tax payment, that is, two cents a gallon, if the gasoline has been used for other non-highway purposes (26 U.S.C. sec. 6421(a)) or by the local transit systems (26 U.S.C. sec. 6421 (b)). We consider that these payments by the Federal government are not refunds in a technical sense but rather allowances to certain consumer-purchasers based on a recognition that the economic burden of the gasoline tax falls on the ultimate consumer. The gasoline tax proceeds are used to provide Federal finances for highway support. There was an obvious inequity in requiring farmers and others using gasoline for off-highway uses to assume the same burden as consumers whose use of the gasoline required use of the highways. The Congress for this reason provided for these payments. This analysis is supported by a recommendation which appears in Senate Report No.367 cited above. There the Committee on Finance recommended that retailers of gasoline receive an allowance equal to one percent of the tax paid on gasoline as an allowance for shrinkage or evaporation of gasoline while in the retailers' hands and prior to its sale to consumer-purchasers. The committee recognized that retailers could not pass on to the consumer-purchasers the already satisfied gasoline tax so far as gasoline that had evaporated was concerned. The

recommendation, though it was not favorably acted on, simply recognized it was fair to refund or make an allowance to the retail dealers, though the tax incidence was not on them, based on gasoline which through evaporation would never be used on the highways but on which the tax had been paid by the producer.

Concerning these refund or allowance provisions under the Federal Act, Martin also argues that the persons eligible for the refund or allowance, that is, farmers, transit companies and other off-highway gasoline users, are unconstitutionally discriminated against in violation of the uniformity provision of our constitution and the due-process and equal-protection clauses of the United States constitution. The reasoning is that they pay the Illinois retailers' occupation tax or use tax on the basis of a price which includes the Federal gasoline tax which is refund-able to them. Thus, these taxpayers pay a higher Illinois tax than other gasoline users, as in their case the Illinois tax is not imposed on the basis of the true and ultimate price to them. We cannot, however, entertain this argument. Martin does not claim to be qualified for a Federal refund as a farmer, transit company or other off-highway user. Thus, even if a discrimination were to be assumed, it does not affect Martin and it has no standing to raise this issue. *(Hornof v. Kroger Co., 35 Ill.2d 125.)* Nor need we, therefore, consider the Department's response to Martin's argument that this constitutional issue has been waived, as Martin failed to raise it in the circuit court.

The second major contention of Martin is that even if it should be found that the legal incidence of the tax is on the producer rather than on the consumer, sales made to consumers by one who is a producer-retailer, as is Martin, should be distinguished from sales made by one who is simply a retailer, and the sales by the producer-retailer should be exempt from the retailers' occupation tax. The ground for this argument is that in the case of a sale by a producer-retailer to the consumer the liability for the

Federal gasoline tax as a producer and the liability for the retailers' occupation tax as a retailer arise at the moment of sale. Because they are simultaneous taxes, one should not be included in computing the other. Martin points out decisions from two other jurisdictions which have taken this position and notes that the rule of the Department from 1935 to 1962 permitted producer-retailers to exclude the Federal gasoline tax in determining the amount of the retailers' occupation tax.

In *Standard Oil Co. v. State, 283 Mich. 85, 276 N.W. 908* and *Standard Oil Co. v. State Tax Commissioner, 71 N.D. 146, 299 N.W. 447,* Michigan and North Dakota adopted the position Martin would have us take. As expressed by the Supreme Court of Michigan the rationale of this position is that since the two taxes attach simultaneously, the Federal gasoline tax should not be considered a part of the sales price but as a fund which is payable by the producer to the Federal government.

The Department's response is that if Martin's argument is accepted it would result in the Federal tax of four cents per gallon being included in the computation of the Illinois tax on sales by retailers who are not also producers and excluded in the case of producer-retailers. This would typically result in the cost of gasoline to a consumer who purchases from a non-producer retailer being greater than to one who purchases from a producer-retailer and would economically discriminate against non-producer retailers. It would violate, argues the Department, the Illinois constitution and the equal protection clause of the United States constitution.

The retailers' occupation tax in Illinois is imposed on a retailer's "gross receipts" (Ill.Rev.Stat. 1969, ch. 120, par. 441). "Gross receipts" are the "total selling price" or the "amount of such sales." (Ill.Rev.Stat. 1969, ch. 120 par. 440.) "Selling price" or "amount of sale" is defined as the "consideration for a sale ***." Ill.Rev.Stat. 1969, ch. 120, par. 440.

The question therefore is whether when the producer-retailer passes on the cost to him of the Federal gasoline tax in the form of a higher price to the consumer, the amount by which the price is thus raised to compensate the producer-retailer can be said to be part of the consideration he receives upon the sale of the gasoline.

In *Fischman & Sons, Inc. v. Department of Revenue, 12 Ill.2d 253,* this court held that a retail seller of packaged liquor could not deduct, for purposes of the retailers' occupation tax, the amount of increase in the purchase price caused by the imposition of the Federal and Illinois liquor taxes. It is true that the liability for those taxes did not arise simultaneously with the retailers' occupation tax, but we cannot see a legal distinction arising from that circumstance. The legal incidence of the Federal gasoline tax is on the producer, who is under no legal duty to pass the burden of the tax on to the consumer. If he does pass on the burden of the tax it is simply done by charging the consumer a higher price. This higher price is the result of the added cost, because of the burden of the Federal tax, to the producer in selling his gasoline. It is no different from other costs he incurs in bringing his product to market, including the costs of raw material, its processing and its delivery. All these costs are includable in his "gross receipts." or the "consideration" he receives for his gasoline. No reason has been given by Martin why the cost of the gasoline tax should be regarded differently from the other costs of the producer-retailer and we perceive none.

The incidence of the tax was not on the consumer as it is under the Illinois Motor Fuel Tax Act. *(American Oil Co. v. Mahin, 49 Ill.2d 199.)* We consider that the rule of the Department which permitted producer-retailers as Martin to deduct the Federal gasoline tax from its gross receipts on sales to retail customers represented an erroneous interpretation of the Retailers' Occupation Tax Act. The superseding and existing rule prohibiting the

deduction correctly interprets the statute. One effect of this rule is to place Martin as a producer-retailer in the same position, so far as the retailers' occupation tax is concerned, as that occupied by retailers who are not also producers.

It is undeniable that weight should be given a contemporaneous construction placed on an ambiguous statute by the officers charged with the duty of administering it. We do not believe the statute is ambiguous. Even if ambiguity is assumed, the rule obviously cannot be invoked to prevent those officers from rectifying an erroneous construction. An administrative construction of a statute is not binding if it is erroneous. *Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 77 L.Ed. 796, 807; Superior Coal Co. v. Department of Revenue, 4 Ill.2d 459, 468.*

Our conclusion that an increase in the sales price caused by the Federal gasoline tax is not deductible by any retailer, including a producer-retailer, from the gross receipts makes it unnecessary for us to consider whether a preference given a producer-retailer in this regard would be constitutional.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*