JAMES JONES, d/b/a Bailey & Jones Scavenger Service, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 77-315

Opinion filed May 19, 1978.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellants.

Curtis Heaston, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendants appeal from a judgment in a class action ordering a refund of the Illinois use tax (use tax) and the municipal retailers' occupation tax (occupation tax) attributable to that portion of the Federal gasoline tax which is refunded by reason of the fuel being consumed for off-highway use.

It appears that a purchaser of gasoline in Illinois pays the following: a pretax base price, State and Federal fuel taxes, and the use and occupation taxes—with both of the latter being figured as a percentage of the sum of the base price and the Federal tax. When the gasoline is used for nonhighway purposes, the purchaser may obtain from the Federal Government a refund of its tax and, from the Illinois Department of

Revenue (the Department), a refund of the State fuel tax. The Department, however, does not refund that portion of the use and occupation taxes which were paid on the refundable Federal tax.

Plaintiff purchased gasoline for nonhighway use and made a claim with the Department for a refund of the State taxes paid on the gasoline. When the Department refunded only the State fuel tax, plaintiff filed a class action for declaratory judgment to obtain a refund of the use and occupation taxes attributable to the refundable Federal tax for himself and all other nonhighway use purchasers in Illinois.

The trial court preliminarily enjoined the Department from disposing of taxes received under the Illinois Motor Fuel Tax Law where the basis of a refund claim was that the use and occupation taxes were paid on a selling price which included the refundable Federal tax. The court also enjoined the State Treasurer from transmitting any of these taxes other than into a segregated protest fund. Thereafter, the court entered an order in favor of plaintiff and the class declaring *inter alia* that the prevailing Federal tax should not be considered a part of the selling price for the purpose of making refunds of Illinois taxes; that if the Federal tax was refundable, the use and occupation taxes paid on that Federal tax should also be refundable to the plaintiff and the members of the class for nonhighway used gasoline; that the practice of the Department in refusing to refund the use and occupation taxes where the Federal tax was included in the selling price is contrary to the Illinois Motor Fuel Tax Law; and that any rule requiring the inclusion of the Federal tax in the selling price in determining refunds of State taxes is unconstitutional and invalid. The court then permanently enjoined the Department from including the Federal tax in the selling price and from transferring into the general revenue fund any of the tax monies held in the protest fund.

OPINION

The threshold question on appeal is whether purchasers of motor fuel in Illinois for nonhighway use are entitled to a refund of the use and occupation taxes attributable to the refundable Federal tax.

We initially note that the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1975, ch. 120, pars. 440-53) imposed the occupation tax upon persons engaged in selling tangible personal property at retail. (Ill. Rev. Stat. 1975, ch. 120, par. 440; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 54-55, 319 N.E.2d 5, 6.) The amount of the taxes is computed as a specific percentage of the gross receipts of such sales at retail (Ill. Rev. Stat. 1975, ch. 120, par. 441), and it is the seller who is required to remit the tax to the Department (Ill. Rev. Stat. 1975, ch. 120, par. 442). The Use Tax Act (UTA) (Ill. Rev. Stat. 1975, ch. 120, pars. 439.1-439.22), which compliments the ROTA (*Turner v. Wright* (1957), 11 Ill. 2d 161, 142

N.E.2d 84) imposes the use tax at the same rate as the ROTA upon the privilege of using tangible personal property purchased at retail in this State (Ill. Rev. Stat. 1975, ch. 120, par. 439.3). Usually, the retailer collects the use tax from the purchaser and remits it to the Department.[1] Ill. Rev. Stat. 1975, ch. 120, par. 493.3; *Hagerty v. General Motors Corp.; Snyderman v. Isaacs* (1964), 31 Ill. 2d 192, 201 N.E.2d 106.

■■ ■ The obligation of a citizen to pay taxes is a purely statutory creation and, conversely, the right to a refund or credit can arise only from the acts of the legislature. (*People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 21 N.E.2d 318; *Weil-McLain Co. v. Collins* (1946), 395 Ill. 503, 71 N.E.2d 91.) Thus, taxes voluntarily paid cannot be recovered by a taxpayer in the absence of a statute providing for a credit or a refund (*People ex rel. Eitel v. Lindheimer*) regardless of whether a valid claim may exist (*Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 337 N.E.2d 305), and this is so even if the taxing statute itself is unconstitutional (*S.A.S. Co. v. Kucharski* (1972), 53 Ill. 2d 139, 290 N.E.2d 224). Furthermore, a payment under protest is not enough for a refund where the validity of the tax is not questioned, unless there is a valid statute authorizing a refund. *People ex rel. City of Highland Park v. McKibbin* (1942), 380 Ill. 447, 450, 44 N.E.2d 449, 450.

In this regard, the Illinois legislature has provided in the ROTA and UTA that the only person entitled to receive a refund or credit is the remitter of the tax. (Ill. Rev. Stat. 1973, ch. 120, pars. 439.19, 445.) The reason for this provision was stated by the court in *Snyderman v. Isaacs,* as follows:

> "[A] refund procedure without safeguards might result in refunds of taxes that had not actually been remitted, or in the unjust enrichment of persons who had not themselves paid the tax, but had passed its burden on to another. To protect the real taxpayer and to prevent unjust enrichment of any other party, the legislature has provided both in the Use Tax Act and in the Retailers' Occupation Tax Act that the only person entitled to receive credit is the remitter of the tax." (31 Ill. 2d 192, 196, 201 N.E.2d 106, 108.)

In the instant case, the allegations of the complaint clearly show that plaintiff and the other members of the class did not remit the tax and therefore have no statutory right to a refund of the taxes remitted by the gasoline retailers.

Notwithstanding the lack of a statutory right to a refund, plaintiff, relying on *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill. 2d 521, 185 N.E.2d 139, and *Williams v. City of Chicago*

---

[1] Where the tax imposed is not paid to a retailer, the user is required to pay it directly to the Department.

(1976), 36 Ill. App. 3d 216, 343 N.E.2d 539, *rev'd on other grounds* (1977), 66 Ill. 2d 423, 362 N.E.2d 1030, asserts that he had standing to seek a refund directly from the Department. We disagree, as we believe neither case supports his position. In *Crane Construction Co.,* a lessee brought an action against the lessor, challenging the constitutionality of an amendment to the UTA and sought to enjoin the lessor from forwarding the use tax to the Department other than by paying such tax under protest. The court held this to be "an appropriate method for litigating questions which it [plaintiff] has a right to have determined" in that plaintiff "obviously has standing to challenge the validity and applicability of the use tax and is not compelled to rely upon its lessor * * * to protect its interests." (25 Ill. 2d 521, 527-28, 185 N.E.2d 139, 143.) In *Williams,* plaintiff was not seeking a refund of taxes paid but, on constitutional grounds, sought a permanent injunction against the further collection of a municipal tax, and we held that the action was appropriately brought under the reasoning of *Crane.*

■■ The procedure used in *Crane* of enjoining retailers from paying a challenged tax to the Department other than under protest was subsequently approved and specifically recommended in *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 348, 348 N.E.2d 161, 167, *Hagerty v. General Motors,* and *S.A.S. Co. v. Kucharski.* In view thereof, it appears that the *Crane* approach should be used by a taxpayer who has not remitted directly to the Department. Here, plaintiff was a nonremitter who did not pursue the *Crane* procedure. Thus, he had no statutory right to a refund, and we conclude that the trial court erred in ordering the refund.

■■ Moreover, even if the *Crane* remedy had been pursued, it would have been to no avail, as the trial court also erred in declaring that the Federal gasoline tax should not have been considered as part of the retailers' selling price for the purpose of determining the occupation and use tax liability. Section 1 of ROTA defines "selling price" as follows:

> " 'Selling price' or the 'amount of sale' means the consideration for a sale valued in money whether received in money or otherwise, * * * and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever * * *." (Ill. Rev. Stat. 1975, ch. 120, par. 440.)

Section 2 of the Use Tax Act defines "selling price" as follows:

> " 'Selling price' means the consideration for a sale valued in money whether received in money or otherwise, * * * and shall be determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or

any other expense whatsoever, * * *." (Ill. Rev. Stat. 1975, ch. 120, par. 439.2.)

Federal law provides that a consumer who buys gasoline for use on his farm (26 U.S.C. §6420(a)), or for other off-highway purposes (26 U.S.C. §6421(a)), may recover payment of all or part of the amount of Federal gasoline tax passed on by the producer. In *Gurley v. Rhoden* (1975), 421 U.S. 200, 44 L. Ed. 2d 110, 95 S. Ct. 1605, the court stated the underlying rationale for these refunds as follows:

"[T]he refunds authorized simply reflect a congressional determination that, because the economic burden of such taxes is traditionally passed on to the purchaser-consumer in the form of increased pump prices, farmers and other off-highway users should be relieved of the economic burden of the cost of the highway program, and that the cost should be borne entirely by motorists who use gasoline to drive on the highways." 421 U.S. 200, 206, 44 L. Ed. 2d 110, 116, 95 S. Ct. 1605, 1609-10.

■■ It appears clear that the legal incidence of the Federal gasoline tax is on the producer of motor fuel rather than on the retailer or customer as it is in the use and occupation taxes. *Gurley v. Rhoden; Martin Oil Service, Inc. v. Department of Revenue* (1971), 49 Ill. 2d 260, 273 N.E.2d 823; *People v. Werner* (1936), 364 Ill. 594, 5 N.E.2d 238.

The significance of this difference of legal incidence was discussed in *Martin Oil Service, Inc.,* where, in holding that the retailers' "selling price" upon which the occupation and use taxes are measured properly includes the Federal tax, the court stated:

"The legal incidence of the Federal gasoline tax is on the producer, who is under no legal duty to pass the burden of the tax on to the consumer. If he does pass on the burden of the tax it is simply done by charging the consumer a higher price. This higher price is the result of the added cost, because of the burden of the Federal tax, to the producer in selling his gasoline. It is no different from other costs he incurs in bringing his product to market, including the costs of raw material, its processing and its delivery. All these costs are includable in his 'gross receipts.' or the 'consideration' he receives for his gasoline. No reason has been given * * * why the cost of the gasoline tax should be regarded differently from the other costs of the producer-retailer and we perceive none." (49 Ill. 2d 260, 268, 273 N.E.2d 823, 828.)

We view *Martin* as controlling, and we hold that the retailers' "selling price" properly includes the Federal gasoline tax.

Furthermore, we reject plaintiff's additional contention that off-highway gasoline users are unconstitutionally discriminated against

because they pay the occupation and use taxes on a selling price which includes the refundable Federal gasoline tax. This argument has no merit in the light of *Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483, 372 N.E.2d 651, where a new car buyer and a dealer, on behalf of themselves and others similarly situated, sought a declaration that the State occupation and use taxes could not be collected on the amount by which a manufacturer's rebate reduced the sales price of a new car. The complaint alleged the buyer purchased an automobile at a selling price of $4,800, upon which a 5% retailers' occupation and use tax in the total amount of $240 was paid. Because the buyer was entitled to a $500 rebate from the manufacturer, thereby reducing the actual sales price to $4,300, it was contended that only $215 in those taxes was payable.

■■ The court, in holding that the complaint failed to state a cause of action, stated:

> "Section 2 [of the ROTA] imposes the tax specifically upon the *seller's* gross receipts. Where those receipts are not in any way reduced, the full amount thereof is subject to the tax. * * * We find nothing in the Act or regulations, however, permitting a seller to deduct from his gross receipts an amount paid by a third party directly to the purchaser even though the purpose of the payment is to reimburse the purchaser for a part of the purchase price. The gross receipts of the seller remain the same whether or not a rebate is paid by someone not directly involved in the retail sale.
>
> Plaintiffs argue that since the purchasers reimburse the seller for the tax payments, the tax should be levied on the actual sales price as determined by looking through the eyes of the purchasers. Plaintiffs assert that as far as they are concerned, the cost of the auto did not include the $500 manufacturer's rebate. This argument, however, ignores the taxation scheme provided in the Act. It is the retailer who is taxed, not the purchaser, and the retailer has the legal obligation to pay the tax whether or not he collects it from the purchaser." 69 Ill. 2d 483, 487-88, 372 N.E.2d 651, 653.

■■ In *Keystone*, the rebate was offered as an inducement to buy; whereas, in the instant case, the Federal tax refund came about as a part of a congressional policy to relieve off-highway gasoline users of all or part of the economic burden of the tax. The similarity between *Keystone* and the instant case lies in the fact that a third party in each case paid an amount to the purchaser in reimbursement of a part of the purchase price. We conclude that the Federal refund in the instant case, like the rebate in *Keystone*, "neither changes the character of the transaction between seller and purchaser nor affects the liability of the retailer to pay a tax computed on the basis of the amount received by him [or that of the consumer to

pay a tax computed on the basis of the selling price]." *Keystone Chevrolet Co.* (1978), 69 Ill. 2d 483, 488, 372 N.E.2d 651, 653.

We also disagree with plaintiff's additional argument that the State engages in a discriminatory practice by including the refundable Federal gasoline tax in the retailers' selling price while excluding the refundable Illinois motor fuel tax from the selling price for the purpose of determining the occupation and use taxes.

■■ The Illinois Motor Fuel Tax Law (Ill. Rev. Stat. 1975, ch. 120, pars. 417-434) imposes a 7½ cent tax on the consumer for the privilege of operating a motor vehicle upon Illinois highways. The tax is measured by the quantity of motor fuel consumed and is collected and remitted to the Department by retailers. In *American Oil Co. v. Mahin* (1971), 49 Ill. 2d 199, 273 N.E.2d 818, it was held that the Illinois motor fuel tax, the legal incidence of which is imposed on the consumer, is not part of the retailers' "selling price" or the "consideration" received from the sale of fuel and, hence, the tax may be excluded from the base upon which the use tax is computed. In contrast, it was held in *Martin Oil Service, Inc.,* that the Federal gasoline tax, the legal incidence of which falls on the producer, must be included in the retailers' selling price when passed on to the consumer because "[i]t is no different from other costs he [producer] incurs in bringing his product to market, including the costs of raw material, its processing and its delivery." (49 Ill. 2d 260, 268, 273 N.E.2d 818, 828.) Thus, a rational reason exists for the inclusion of the Federal gasoline tax and the exclusion of the Illinois motor fuel tax from the retailers' "selling price."

Parenthetically, we note that both ROTA (par. 439.19) and UTA (par. 445) allow a refund of taxes "paid in error" and of a payment made as tax, penalty and interest "which was not due" whether any such payment resulted from a mistake of fact or error of law. In the instant case, in the light of our holding that the selling price properly included the Federal tax, it cannot be said that the tax payments made by plaintiff and the other gasoline purchasers resulted from a mistake of fact or error of law.

For the reasons stated, the judgment is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.