SEARS HOLDINGS CORPORATION, Plaintiff-Appellee, v. MARIA PAPPAS, County Treasurer and *ex officio* County Collector of Cook County, Illinois, Defendant-Appellant.

First District (4th Division)   No. 1—08—1115

Opinion filed May 7, 2009.—Rehearing denied June 2, 2009.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Tatia Gibbons, Ayesha Khan, and Jessica Pipersburgh, Assistant State's Attorneys, of counsel), for appellant.

Neal, Gerber & Eisenberg LLP, of Chicago (David S. Martin, Thomas J. McNulty, and Thomas J. Boyle, of counsel), for appellee.

JUSTICE NEVILLE delivered the opinion of the court:

The Cook County assessor (Assessor) made a determination that Sears Holdings Corp. (Sears Holdings), the plaintiff, overpaid its taxes. Following the determination, the Assessor executed a certificate of error and sent a letter that informed Sears Holdings about the nature and cause of the error in the tax assessment. The Assessor's certificate of error was later endorsed by the three members of the board of review. The Cook County treasurer (Treasurer), the *ex officio* county collector,[1] filed an application before the trial court for judgment and the Assessor filed an objection. The trial court entered a final judgment on December 20, 2005, on the tract described in the objection and ordered a tax refund to the taxpayer for the 2001 taxes that were levied based upon an assessed property value that was excessive. In a subsequent order, the April 2, 2008, order, the trial court directed the Treasurer to refund to the taxpayer, Sears Holdings, statutory interest, pursuant to section 20—178 of the Property Tax Code (35 ILCS 200/20—178 (West 2006)). Therefore, the Treasurer refunded $369,481.58 to the taxpayer, including $11,084.45 in interest, for the period beginning December 20, 2005, and ending on July 26, 2006, the date the refund was made.

Sears Holdings filed a motion to compel the Treasurer to pay interest retroactive to 60 days after April 22, 2003, the date the Assessor issued the certificate of error. The Treasurer filed a motion to dismiss Sears Holdings' motion to compel. On December 3, 2007, the trial court denied the Treasurer's motion to dismiss and granted Sears Holdings' motion to compel. In an April 2, 2007, order, the trial court ordered the Treasurer to recalculate the section 20—178 statutory interest awarded on the certificate of error refund and to apply a credit in the amount of $11,084.45 to the interest calculated pursuant to the order.

In this appeal, the Treasurer argues (1) that the trial court erred when it denied its motion to dismiss Sears Holdings' motion to compel and ordered a recalculation of the interest due on the refund, and (2)

---

[1]The treasurers of all counties shall be *ex officio* county collectors of their counties (35 ILCS 200/19—35 (West 2006)); therefore, we will hereinafter use the titles interchangeably.

that the trial court erred when it ordered the payment of judgment interest, pursuant to section 2—1303 of the Code of Civil Procedure. 735 ILCS 5/2—1303 (West 2006).

## BACKGROUND

Sears Holdings is the owner of a parcel of property identified by the permanent index number of 15—25—200—002—0000 and commonly known as 7503 Cermak Road, North Riverside Park, Cook County, Illinois. In 2001, the total tax levied against the property was $717,220.18. Sears Holdings paid $347,546.57 as the first installment of the 2001 taxes on February 27, 2002. Sears Holdings also paid $369,973.61 as the second installment of the 2001 taxes on October 25, 2002.

On April 22, 2003, the Cook County Assessor sent the following letter to Sears Holdings in connection with the issuance of a certificate of error:

"We are pleased to inform you that the Cook County Assessor's Office has issued a Certificate of Error which may affect your property taxes. Please note that the issuance of the Certificate of Error is only the first step in the process. *The Certificate of Error becomes final only after the Assessor's Office or the Circuit Court approves it.*

Meanwhile, prior to final approval, you may submit the recommended tax bill to the Cook County Collector's Office. The information below details the recommended tax amount due for your property. The recommendation assumes that the Certificate of Error will be finally approved. If the Certificate of Error is denied, you will be liable for the entire amount of the original tax bill. Please refer to the enclosure for further details concerning Certificates of Error.

You will receive written notice of the final approval or denial of your Certificate of Error. If the Certificate of Error receives final approval, your tax bill will be adjusted accordingly. If the final approval of the Certificate of Error entitles you to a refund, the Cook County Collector will send you further information.

If you pay this bill in person, please make sure that you give the Collector this entire statement, as well as your original tax bill. If you pay this bill by mail, include the bottom portion of this bill with your payment. It is strongly advised that you retain a copy of this letter for your records." (Emphasis in original.)

The Assessor's letter that was mailed to the taxpayer also indicates (1) that Sears Holdings' property's original assessed value was $4,200,647, (2) that the property's original equalized assessed value was $9,702,654, (3) that the property's recommended assessed value

was $2,036,651, and (4) that the property's recommended equalized assessed value was $4,704,256. The Assessor's letter also indicated that the total recommended tax was $347,738.60.

The certificate of error in the record indicated that the assessed valuation of the parcel has previously been fixed at $1,315,320 for the land and $2,885,327 for the improvements for a total of $4,200,647. The certificate of error also indicated that the correct assessed valuation was $1,315,320 for the land and $721,331 for the improvements for a total of $2,036,651. Therefore, the certificate of error provided that there was an excessive valuation for the year in question of $2,163,996. Therefore, the certificate of error provided that the recommended equalized assessed value of $4,704,256 be multiplied by the tax rate of 7.392%, which yielded a total recommended tax of $347,738.60. Therefore, as a result of the issuance of the certificate of error, the original tax burden, which was originally set at $717,220.18 was reduced to $347,738.60.

As required by section 14—15 of the Property Tax Code (35 ILCS 200/14—15 (West 2002)), the three members of the board of review endorsed the Assessor's certificate of error between January 27, 2005, and February 15, 2005 (Joseph Berrios on January 27, 2005; Maureen Murphy on February 7, 2005; and Larry Rogers on February 15, 2005), and found that "an occupancy factor was not applied to the [building] value."

On December 20, 2005, the trial court entered a final judgment and agreed order based upon the Assessor's objection to the application of the county collector of Cook County.[2] In the trial court's December 20, 2005, order, it found that the parties agreed (1) that the Assessor (a) discovered an error in the assessment on the subject property, (b) executed a certificate that correctly and accurately set forth the nature and cause of the error, and (c) filed the certificate of error and supporting documentation with the trial court to correct the error pursuant to the authority granted by section 14—15 of the Property Tax Code (35 ILCS 200/14—15 (West 2002)); (2) that the certificate of error was endorsed by the Assessor or the Assessor and the board of appeals; (3) that the original assessment was excessive and needed to be reduced; and (4) that the parties stipulated to the admission into evidence of the certificate of error and supporting documentation. In addition, based upon the agreement of the parties and upon the certificate of error and documentation supporting the certificate, the trial court sustained the Assessor's objection and

[2]The formal objection of the Assessor to the application of the county collector of Cook County is missing from the record on appeal.

entered judgment in favor of the people of the State of Illinois and against the above-described tract of land for the amount of taxes, interest, penalties and costs based upon the assessed unequalized valuation of $2,036,651. The order also provided that no judgment was to be entered for taxes in excess of the aforementioned amount and that any excess taxes that were paid were to be refunded.

On July 26, 2006, the county collector prepared and issued check number 02315986 in the amount of $380,566.03. Pursuant to section 20—178 of the Property Tax Code, the July 26, 2006, refund check of $369,481.58 included the 2001 excess taxes paid by Sears Holdings and interest in the amount of $11,084.45 for the period beginning December 20, 2005, the date of the final judgment, and ending July 26, 2006, the date the refund was paid.

On June 12, 2007, Sears Holdings filed a motion to compel enforcement of the court's December 20, 2005, order and argued that Maria Pappas, the Cook County Treasurer, should have paid additional interest on the certificate of error refund: interest should have been paid from 60 days after April 22, 2003, the date the certificate of error issued, until July 26, 2006, the date the refund was paid. On August 30, 2007, the Treasurer filed a motion under sections 2—619(a)(2) and (a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(2), (a)(9) (West 2006)) to dismiss Sears Holdings' motion to compel enforcement of the court's December 20, 2005, order. The Treasurer argued that the motion to compel should have been dismissed (1) because Sears Holdings lacked standing to object to any part of the certificate of error process because taxpayers have no statutory or constitutional right to participate in the process, and (2) because section 20—178 of the Property Tax Code governs the calculation of interest on a certificate of error refund.

Sears Holdings argued in its response to the Treasurer's motion to dismiss that it had standing because it would receive a benefit from the enforcement of the certificate of error. Sears Holdings conceded that section 20—178 of the Property Tax Code governs the calculation of interest on a certificate of error refund but argued that the interest calculation should have begun 60 days following April 22, 2003, the date the Assessor issued its certificate of error and the letter to Sears Holdings that recommended a reduction of the assessed value of the property and in the assessed taxes.

On December 3, 2007, the trial court held a hearing and denied the Treasurer's motion to dismiss and found (1) that once the judgment was entered, Sears Holdings acquired a legally recognizable right to the refund; (2) that the terms "certified" and "adjudicated" in section 20—178 of the Property Tax Code (35 ILCS 200/20—178

(West 2006)) do not refer to the day the certificate of error is issued; and (3) that the certificate or error was issued on April 22, 2003, and, pursuant to section 20—178 of the Property Tax Code, interest shall be paid from 60 days after the certificate of error is issued to the date the refund is made.

On January 4, 2008, the trial court granted the Treasurer's motion for leave to file a written response to Sears Holdings' motion to compel enforcement. The Treasurer argued (1) that Sears Holdings lacked standing, (2) that interest on the certificate of error refund began accruing 60 days after December 20, 2005, which is the date the trial court entered a final judgment and agreed order that resulted in the issuance of the certificate of error, and (3) that the trial court should have denied Sears Holdings' motion to compel enforcement based on *laches*.

On February 15, 2008, the trial court noted that it had previously found that Sears Holdings had standing and granted enforcement of the court's December 20, 2005, order. The trial court characterized the *laches* argument as a new matter and, therefore, granted the Treasurer leave to file a response.

On April 2, 2008, the trial court held a hearing and denied the Treasurer's motion to dismiss based on *laches*. The trial court also ordered the Treasurer to pay Sears Holdings statutory interest based on section 20—178 of the Property Tax Code calculated from June 20, 2003, the date that was 60 days after April 22, 2003, the date the certificate of error was issued, to July 26, 2006, less the amount of interest previously paid on the certificate of error.

On April 28, 2008, the Treasurer filed a notice of appeal from the trial court's December 3, 2007, February 15, 2008, and April 2, 2008, orders and all other orders made appealable by entry of a final judgment in this case. On June 23, 2008, the Treasurer filed a motion in the trial court for a stay of enforcement of the trial court's April 2, 2008, order. On July 9, 2008, the trial court granted the Treasurer's motion to stay enforcement of the April 2, 2008, order, but found that Sears Holdings was "entitled to the payment of judgment interest at the rate of 6% per annum, pursuant to [section 2—1303 of the Code of Civil Procedure (735 ILCS 5/2—1303 (West 2006))] on the amount of interest stayed and not previously paid to Plaintiff pending the outcome of any appeal, from April 22, 2008 through the date the additional interest is paid to Plaintiff."

## ANALYSIS

### Standard of Review

Appellate courts review an order dismissing a complaint under section 2—619 of the Code of Civil Procedure *de novo. Ball v. County*

*of Cook,* 385 Ill. App. 3d 103, 104 (2008), citing 735 ILCS 5/2—619 (West 2006). When appellate courts engage in statutory interpretation, review is also *de novo. Alvarez v. Pappas,* 229 Ill. 2d 217, 220 (2008), citing *Wisniewski v. Kownacki,* 221 Ill. 2d 453, 460 (2006).

### Certificates of Error Refunds

In this case we are asked to determine whether the trial court erred when it denied the Treasurer's motion to dismiss because the court did not interpret section 14—15 of the Property Tax Code, the certificate of error provision which prescribes the procedure for the payment of a refund when the Assessor discovers an error in the assessment, in conjunction with section 20—178 of the Property Tax Code, the interest provisions which prescribe the formula for computing interest when a taxpayer is due a refund. Because we must interpret two statutory provisions, the principles guiding our analysis are familiar. *Alvarez v. Pappas,* 229 Ill. 2d 217, 228 (2008). "The primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *Alvarez,* 229 Ill. 2d at 228, citing *General Motors Corp. v. State of Illinois Motor Vehicle Review Board,* 224 Ill. 2d 1, 13 (2007). "All other rules of statutory construction are subordinate to this cardinal principle." *Alvarez,* 229 Ill. 2d at 228, citing *In re Detention of Lieberman,* 201 Ill. 2d 300, 312 (2002), citing *Sylvester v. Industrial Comm'n,* 197 Ill. 2d 225, 232 (2001). "In determining legislative intent, the first step is to examine the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law." *Alvarez,* 229 Ill. 2d at 228, citing *Yang v. City of Chicago,* 195 Ill. 2d 96, 103 (2001). "The statutory language must be afforded its plain, ordinary, and popularly understood meaning." *Alvarez,* 229 Ill. 2d at 228, citing *People ex rel. Sherman v. Cryns,* 203 Ill. 2d 264, 279 (2003). "Where the language is clear and unambiguous, the statute must be given effect as written without resort to further aids of statutory construction." *Alvarez,* 229 Ill. 2d at 228, citing *Krautsack v. Anderson,* 223 Ill. 2d 541, 553 (2006). "In construing a statute, we presume that the legislature did not intend absurdity, inconvenience or injustice." *Alvarez,* 229 Ill. 2d at 228, citing *Burger v. Lutheran General Hospital,* 198 Ill. 2d 21, 40 (2001).

" '[T]he legislature has established a mechanism for obtaining a refund of overpaid taxes and taxpayers must comply with its terms to receive a refund.' " *Ball v. County of Cook,* 385 Ill. App. 3d 103, 106 (2008), quoting *Alvarez,* 229 Ill. 2d at 234. However, in Illinois, taxpayers have neither a statutory nor a constitutional right to participate in a certificate of error procedure. *Ball,* 385 Ill. App. 3d at 105, citing *In re Application of the Cook County Treasurer for the 1968, 1973, 1980*

& *Other Tax Years*, 172 Ill. App. 3d 192, 199 (1988), citing *Chicago Sheraton Corp. v. Zaban*, 71 Ill. 2d 85 (1978). The certificate of error procedure is separate and distinct from the refund procedure available to the taxpayer. *Ball*, 385 Ill. App. 3d at 105, citing *Chicago Sheraton Corp.*, 71 Ill. 2d at 91. Taxpayers do not have a private cause of action under section 14—15 of the Property Tax Code. *Ball*, 385 Ill. App. 3d at 105, citing *Chicago Sheraton Corp.*, 71 Ill. 2d at 91. The Supreme Court has held that "the General Assembly intended the certificate of error procedure to be an expeditious summary process, without participation by the taxpayer, for correcting the assessor's errors." *Chicago Sheraton Corp.*, 71 Ill. 2d at 91.

We find that Sears Holdings is not attacking the procedure that the Assessor used to issue the certificate of error. Instead, Sears Holdings is challenging the computation of interest, a part of the refund procedure that commences once the certificate of error procedure ends with the granting of a tax refund.

Section 14—15 of the Property Tax Code prescribes a three-step procedure for certificate of error refunds in counties with a population greater than 3 million people. 35 ILCS 200/14—15 (West 2006). According to section 14—15(a) of the Property Tax Code, if the county assessor discovers an error or mistake in the assessment, the first step occurs when the assessor executes a certificate that sets forth the nature and cause of the error. 35 ILCS 200/14—15(a) (West 2006). In order to interpret this statute, we must define the word "execute" in the statute. We find that the word "execute" is defined in Black's Law Dictionary as "[t]o complete; to make; to sign; to perform; to do; to follow out; to carry out according to its terms; to fulfill the command or purpose of." Black's Law Dictionary 567 (6th ed. 1990).

The Illinois Supreme Court instructs courts that "all provisions of a legislative enactment are viewed as a whole, and thus all words and phrases must be interpreted in light of other relevant provisions and must not be construed in isolation." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 493 (2009), citing *Brucker v. Mercola*, 227 Ill. 2d 502, 514 (2007). We find that section 14—15 must be construed with section 20—178 because section 20—178 makes reference to section 14—15 of the Property Tax Code. 35 ILCS 200/20—178 (West 2006). We also find that section 20—178 of the Property Tax Code conditions the payment of interest (1) on the county collector making a refund on a certificate of error "issued" under section 14—15, and (2) on the certificate of error being "certified" or "adjudicated." 35 ILCS 200/20—178 (West 2006). Section 20—178 makes it clear that the certificate of error (1) must "issue" and (2) must be "certified" or "adjudicated" before the interest may be paid by the

county collector. 35 ILCS 200/20—178 (West 2006). Section 20—178 also makes it clear that certificates of error are only "issued" by the chief county assessment officer, who we find is the Assessor and not the trial court judge. 35 ILCS 200/20—178 (West 2006). In addition, section 14—15 makes it clear that certificates of error are "certified" by the Assessor, but they are "adjudicated" by a court. 35 ILCS 200/14—15 (West 2006).

We note that the word "issue" is used in both sections 14—15 and 20—178 of the Property Tax Code (35 ILCS 200/14—15, 20—178 (West 2006)); therefore, we must define the word "issue" in the statutes. The word "issue" is defined in Black's Law Dictionary as "[t]o send out, to send out officially." Black's Law Dictionary 830 (6th ed. 1990). Using the definitions for "execute" and "issue," we find that the Assessor "executes" a certificate of error when he sets forth the nature of the cause of the error and signs it, and the Assessor "issues" a certificate of error when he mails or sends it to the taxpayer. Accordingly, we hold that the certificate of error in this case was issued by the Assessor on April 22, 2003, when the Assessor sent the official letter to the taxpayer and incorporated in the letter a "Certificate of Error Recommended Tax Bill."

The second step of the certificate of error refund procedure occurs (a) when the certificate is endorsed by the county assessor, or (b) when the certificate is endorsed by the county assessor and the board of appeals where the certificate is executed for any assessment which was the subject of a complaint filed in the board of appeals for the tax year for which the certificate is issued. 35 ILCS 200/14—15(a) (West 2006). Here, the certificate was endorsed by the three members of the board of review on three different dates: Joseph Berrios on January 27, 2005; Maureen Murphy on February 7, 2005; and Larry Rogers on February 15, 2005.

The third step of the certificate of error refund procedure occurs when the certificate is certified by the Assessor or the certificate of error is presented and received in evidence in any court of competent jurisdiction. 35 ILCS 200/14—15(a) (West 2006). Section 14—15(a) of the Property Tax Code provides that "[t]he county assessor shall develop reasonable procedures for the filing and processing of certificates of error." 35 ILCS 200/14—15(a) (West 2006). Section 14—15(a) of the Property Tax Code further provides that certification is authorized, at the discretion of the Assessor, for (1) certificates of error allowing homestead exemptions under Article 15; (2) certificates of error on residential property of six units or less; (3) certificates of error allowing exemption of the property pursuant to section 14—25 of

the Property Tax Code; and (4) other certificates of error reducing assessed value by less than $100,000. 35 ILCS 200/14—15(a) (West 2006). Prior to either the certification of the certificate of error by the Assessor or presentation of the certificate of error to the court, section 14—15(a) of the Property Tax Code provides that the Assessor or his or her designee "shall execute and include in the certificate of error a statement attesting that all procedural requirements pertaining to the issuance of the certificate of error have been met and that in fact an error exists." 35 ILCS 200/14—15(a) (West 2006).

Certificates of error that are not certified by the Assessor, pursuant to the procedure in section 14—15, need to be presented to the court. 35 ILCS 200/14—15(a) (West 2006). Section 14—15(a) of the Property Tax Code also provides when a certificate of error is presented to the trial court for adjudication, it is filed as an objection in the application for judgment and order of sale for the year in relation to which the certificate is made or as an amendment to the objection. 35 ILCS 200/14—15(a) (West 2006). Finally, the State's Attorney of the county in which the property is located will mail a copy of any final judgment entered by the court to the taxpayer of record for the year in question. 35 ILCS 200/14—15(a) (West 2006).

Section 14—15(a) of the Property Tax Code further provides that the county treasurer (1) shall give effect to certified certificates of error, (2) shall mark the tax books, and (3) shall issue refunds to the taxpayer upon receipt of a certified certificate of error from either (a) the county assessor, or (b) the county assessor and the board of review where the board of review is required to endorse the certificate of error. 35 ILCS 200/14—15(a) (West 2006).

In conjunction with section 14—15 of the Property Tax Code, once the county collector makes a refund on a certificate of error certified by the Assessor or adjudicated by a court pursuant to section 14—15, section 20—178 of the Property Tax Code prescribes an interest rate and a formula for the county collector to compute the interest on the refund. 35 ILCS 200/20—178 (West 2006). According to section 20—178 of the Property Tax Code, when refunds are due on certificates of error issued under section 14—15 and certified by the Assessor or adjudicated by the trial court, the county collector shall pay interest on the refund due to the taxpayer at the rate of 0.5% per month. 35 ILCS 200/20—178 (West 2006). In addition, section 20—178 of the Property Tax Code codifies a formula that provides that the interest due to the taxpayer on the refund shall be paid from 60 days after the certificate of error is issued by the chief county assessment officer to the date the refund is made. 35 ILCS 200/20—178 (West 2006).

We previously found that the Assessor's letter to the taxpayer and the "Certificate of Error Recommended Tax Bill" at the bottom of the letter bears the date of April 22, 2003. The Assessor's letter informs the taxpayer that "the issuance of the Certificate of Error is only the first step in the process. *The Certificate of Error becomes final only after the Assessor's Office or the Circuit Court approves it.*" (Emphasis in original.) We also found that the chief county assessment officer is the Assessor and not the trial court judge.

We also found that section 20—178 of the Property Tax Code references section 14—15 of the Property Tax Code. 35 ILCS 200/20—178 (West 2006). In order to properly give effect to section 14—15, we recognize that a taxpayer's entitlement to the refund of overpaid taxes does not become final until it is either certified by the Assessor or adjudicated by the court. 35 ILCS 200/14—15 (West 2006). However, once a trial court enters a judgment on a certificate of error and the county collector pays the refund, we find that section 20—178 unambiguously provides (1) that the taxpayer's interest commences on the date the certificate of error was issued by the Assessor, and (2) that the taxpayer's interest accrues until the refund is made by the County Collector. 35 ILCS 200/20—178 (West 2006) ("interest shall be paid from 60 days after the certificate of error is issued by the chief county assessment officer to the date the refund is made").

Section 14—15 of the Property Tax Code prescribes the procedure for payment of a refund (35 ILCS 200/14—15 (West 2006)), and section 20—178 prescribes the interest rate and the formula for computing the interest once the refund is paid (35 ILCS 200/20—178 (West 2006)). We find, pursuant to section 14—15 of the Property Tax Code, (1) that the certificate of error issued on April 22, 2003, when the Assessor, the chief county assessment officer, executed and sent out a certificate of error, and (2) that the county collector was authorized to pay the refund to the taxpayer when the certificate of error was adjudicated by the trial court and a final judgment was entered on December 20, 2005. After reviewing sections 14—15 and 20—178 of the Property Tax Code, we hold that the trial court was correct when it found that the period beginning on June 20, 2003, which was 60 days after the certificate of error was issued on April 22, 2003, and ending June 26, 2006, when the refund was made by the county collector, was the correct period for the calculation of the interest due to the taxpayer. Accordingly, we hold that the trial court did not err when it entered the December 3, 2007, order that denied the Treasurer's motion to dismiss, and when it entered the April 2, 2008, order that granted Sears Holdings' motion to compel enforcement of the December 20, 2005, "final judgment and agreed order."

## Statutory Interest

Next, the Treasurer argues that the trial court erred when it entered its July 9, 2008, order. In addition to granting the motion to stay, the July 9, 2008, order also found that Sears Holdings was "entitled to the payment of judgment interest at the rate of 6% per annum pursuant to 735 ILCS 5/2—1303 on the amount of interest stayed and not previously paid to Plaintiff pending the outcome of any appeal, from April 2, 2008 through the date the additional interest is paid to Plaintiff."

Sears Holdings argues (1) that it is entitled to post judgment interest pursuant to section 2—1303 of the Code of Civil Procedure (735 ILCS 5/2—1303 (West 2006)), (2) that this issue should be deemed to have been waived (a) because the Treasurer did not object to the trial court's July 9, 2008, order, and (b) because the Treasurer's counsel drafted the order to which it now objects on appeal.

If the judgment interest issue was waived, we would not need to address this issue. Therefore, before we address the merits of the Treasurer's argument that Sears Holdings was not entitled to judgment interest pursuant to section 2—1303 of the Code of Civil Procedure, we must determine whether the Treasurer waived the issue.

The rules for the attachment of appellate jurisdiction are well established. "It is generally understood that '[t]he jurisdiction of the appellate court attaches upon the proper filing of a notice of appeal. When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court.' " *State ex rel. Beeler, Schad & Diamond, P.C. v. Target Corp.*, 367 Ill. App. 3d 860, 863 (2006), quoting *Daley v. Laurie*, 106 Ill. 2d 33, 37 (1985), citing *People v. Carter*, 91 Ill. App. 3d 635, 638 (1980). As a consequence of the filing of the notice of appeal, "any order entered while the [trial] court is divested of jurisdiction during the pendency of an appeal *** is void." *Wierzbicki v. Gleason*, 388 Ill. App. 3d 921, 926 (2009), citing *American Smelting & Refining Co. v. City of Chicago*, 409 Ill. 99, 104 (1951). However, " 'trial courts retain jurisdiction after notice of appeal is filed to determine matters collateral or incidental to the judgment.' " *Illinois Health Maintenance Organization Guaranty Ass'n v. Shapo*, 357 Ill. App. 3d 122, 141 (2005), quoting *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 289 (1993). A stay of judgment is a matter that is collateral to the judgment because it neither affects nor alters the issues on appeal. *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514, 526 (2001), citing *In re Estate of Goodlett*, 225 Ill. App. 3d 581, 587 (1992).

Here, the record reveals that Sears Holdings' notice of appeal in this case was filed on April 28, 2008, before the Treasurer's motion to

stay was filed in the trial court. We find that the provision in the trial court's July 9, 2008, order that granted the Treasurer's motion to stay did not affect or alter the issues on appeal. Therefore, the trial court had jurisdiction to grant the Treasurer's motion to stay. *Steinbrecher*, 197 Ill. 2d at 526-27; see also *Illinois Health Maintenance Organization*, 357 Ill. App. 3d at 141, quoting *Illinois State Toll Highway Authority*, 157 Ill. 2d at 289.

We find, however, that the trial court's award of judgment interest, pursuant to section 2—1303 of the Code of Civil Procedure, is a matter that is directly related to the judgment. The trial court's award of judgment interest altered the issues on appeal because the trial court increased the amount of the judgment by awarding additional interest. The trial court was divested of subject matter jurisdiction when the notice of appeal was filed on April 28, 2008. Because the trial court altered the judgment when it awarded judgment interest after the notice of appeal was filed in the appellate court and the trial court had been divested of subject matter jurisdiction, the provision in the July 9, 2008, order awarding judgment interest is void. *American Smelting*, 409 Ill. at 104. Therefore, the trial court lacked subject matter jurisdiction on July 9, 2008, to enter an award for judgment interest pursuant to section 2—1303 of the Code of Civil Procedure. *American Smelting*, 409 Ill. at 104; 735 ILCS 5/2—1303 (West 2006).

The next question we must answer is whether the Treasurer has a right to challenge the judgment interest order in this appeal. Because the trial court awarded judgment interest after the notice of appeal was filed, (1) the trial court lacked subject matter jurisdiction to enter the provision in its July 9, 2008, order that awarded judgment interest (*State ex rel. Beeler, Schad & Diamond, P.C.*, 367 Ill. App. 3d at 863, quoting *Daley*, 106 Ill. 2d at 37, citing *Carter*, 91 Ill. App. 3d at 638), and (2) the trial court's judgment interest provision was void and a nullity because it was entered when the trial court lacked subject matter jurisdiction. *Arnold v. Mt. Carmel Public Utility*, 369 Ill. App. 3d 1029, 1032 (2006) ("[a] void order is a complete nullity from its inception and has no legal effect"), citing *Siddens v. Industrial Comm'n*, 304 Ill. App. 3d 506, 511 (1999). In light of our finding that the judgment interest provision in the trial court's July 9, 2008, order is void, it may be attacked, either directly or collaterally, at any time and in any court. *Arnold*, 369 Ill. App. 3d at 1032, citing *Siddens*, 304 Ill. App. 3d at 511. Therefore, we hold that the Treasurer has a right to attack the judgment interest provision in the July 9, 2008, order.

Next, we must determine whether Sears Holdings is entitled to judgment interest. We note that " '[t]he obligation of a citizen to pay taxes is a purely statutory creation and, conversely, the right to a

refund or credit can arise only from the acts of the legislature.' " *Cinch Manufacturing Co. v. Rosewell*, 276 Ill. App. 3d 835, 839 (1995), quoting *Jones v. Department of Revenue*, 60 Ill. App. 3d 886, 889 (1978); see also *Shapiro v. Barrett*, 68 Ill. App. 3d 656, 661 (1978) ("no interest is payable on tax refunds unless interest is provided for by statute"), citing *Clarendon Associates v. Korzen*, 56 Ill. 2d 101 (1973) and *Lakefront Realty Corp. v. Lorenz*, 19 Ill. 2d 415 (1960). Therefore, "[c]ourts have interpreted silence of a statute on the question of interest as disclosing a legislative intent to deny interest." *Shapiro*, 68 Ill. App. 3d at 661, citing *Lakefront Realty Corp.*, 19 Ill. 2d 415.

We find that the legislature expressly provided for certificates of error in section 14—15 of the Property Tax Code and provided for awards of interest in connection with the issuance of a certificate of error in section 20—178 of the Property Tax Code. 35 ILCS 200/14—15, 20—178 (West 2006). We also find that sections 14—15 and 20—178 of the Property Tax Code do not refer to judgment interest. *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 215 (2007), quoting *City of Springfield v. Allphin*, 82 Ill. 2d 571, 577 (1980) (" 'Interest statutes *** are in derogation of the common law and must be strictly construed. Nothing is to be read into them by intendment or implication' "); see also *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 240 (1994) ("Statutes in derogation of the common law are to be strictly construed in favor of persons sought to be subjected to their operation"). We find that a refund was paid by the Treasurer. We also find that the taxpayer is only entitled to statutory interest "up to the date of the refund" because the certificate of error statutory procedure is a creature of statute, and we must strictly construe the provisions of that statute. 35 ILCS 200/20—178 (West 2006) ("interest shall be paid from 60 days after the certificate of error is issued by the chief county assessment officer to the date the refund is made"). In light of the preceding, we reject Sears Holdings' claim of entitlement to judgment interest pursuant to section 2—1303 of the Code of Civil Procedure. Accordingly, we hold that the trial court was correct when it awarded statutory interest pursuant to section 20—178 of the Property Tax Code, but lacked subject matter jurisdiction to award judgment interest pursuant to section 2—1303 of the Code of Civil Procedure. 735 ILCS 5/2—1303 (West 2006).

## CONCLUSION

In light of the foregoing, (1) we hold that the trial court did not err when it entered the December 20, 2005, order that directed a tax refund to the taxpayer for the 2001 taxes that were levied based upon an assessed property value that was excessive; (2) that the trial court

did not err when it entered the April 2, 2008, order that directed that the county collector refund to the taxpayer, Sears Holdings, statutory interest, pursuant to section 20—178 of the Property Tax Code (35 ILCS 200/20—178 (West 2006)), for the period commencing on June 20, 2003, and ending on July 26, 2006, the date of the trial court's final judgment, and (3) that the trial court did not err when it entered the July 9, 2008, order that stayed the payment of statutory interest in this matter. Finally, we hold that the trial court lacked subject matter jurisdiction when it entered the provision in the July 9, 2008, order that awarded judgment interest pursuant to section 2—1303 of the Code of Civil Procedure, and we vacate the judgment interest provision in the order. 735 ILCS 5/2—1303 (West 2006).

Affirmed in part and vacated in part.

GALLAGHER and STEELE, JJ., concur.