GENERAL MOTORS CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, Defendant-Appellant and Cross-Appellee.—SBC, Plaintiff-Appellee and Cross-Appellant, v. MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, Defendant-Appellant and Cross-Appellee.—SBC, Plaintiff-Appellee, v. MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, Defendant-Appellant.—NEWCASTLE PROPERTIES, LLC, Plaintiff-Appellee, v. MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, Illinois, Defendant-Appellant.—CHARLES YETTO *et al.*, Plaintiffs-Appellees, v. MARIA PAPPAS, Treasurer and *ex officio* County Collector of Cook County, Illinois, Defendant-Appellant.

First District (3rd Division) Nos. 1—07—1948, 1—07—2706 through 1—07—2708, 1—08—0502 through 1—08—0516, 1—08—0518 through 1—08—0531, 1—08—0596, 1—08—0609, 1—08—1932, 1—08—2331 through 1—08—2237, 1—08—3046, and 1—08—3322 through 1—08—3357 cons.

Opinion filed June 24, 2009.

Anita Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Margarett Zilligen, and Tatia Gibbons, Assistant State's Attorneys, of counsel), for appellant.

Mark R. Davis, of O'Keefe, Lyons & Hynes, LLC, of Chicago, for appellee General Motors Corporation.

Christopher B. Kaczynski, of Smith, Hemmesch, Burke, Brannigan & Guerin, of Chicago, for appellees SBC and Newcastle Properties, LLC.

James A. Rooney, of Chicago, for appellees Charles Yetto *et al.*

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

Oral arguments on these consolidated appeals, identified under *General Motors Corp. v. Pappas*, No. 1—07—1948, and *Yetto v. Pappas*, No. 1—08—0502, were heard concurrently. On the court's own motion, these cases have been consolidated for the purposes of this opinion because they involve resolution of the same primary issues and the same defendant, Maria Pappas, Treasurer and *ex officio* County Collector of Cook County (Treasurer). *General Motors* involves four consolidated appeals in which plaintiff taxpayers General Motors Corporation (GM), SBC, and Newcastle Properties, L.L.C. (Newcastle), received court-ordered real estate tax refunds based on plaintiffs' objections to the assessment and taxes on their properties for various tax years. *Yetto* involves 39 consolidated cases involving tax rate objections, with 37 additional appeals resulting from the issuance of a second refund due to an error by the Treasurer excluding an amount from the Chicago Board of Education taxing district. The core issues are the same for all appeals—the correct interest to be paid on property tax refunds pursuant to section 23—20 of the Property Tax Code (Code) (35 ILCS 200/23—20 (West 2006)) and the propriety of judgment interest on a sum determined from interest owed pursuant to the Code.

The Code was amended, effective January 1, 2006, to change the interest rate on tax refunds from a flat 5% rate to a rate based on the consumer price index (CPI). In each of the cases, the trial court entered judgment orders granting plaintiffs 5% interest from the time the taxes were paid until January 1, 2006, and the lower rate based on the CPI for the time after January 1, 2006. The Treasurer filed these appeals arguing that the terms of the Code require payment of refunds made after January 1, 2006, at the lower interest rate. The Treasurer also argues that the trial court erred in ordering the payment of judgment interest on the amount stayed in the *Yetto* case and for SBC and Newcastle. The *General Motors* plaintiffs filed cross-appeals, seeking review of the trial court's decision to grant the 5% interest rate only for the time period before January 1, 2006, arguing that the 5% rate should be paid for the entirety of the refund period. For the following reasons, the orders of the trial court are affirmed.

## I. BACKGROUND

Final orders were entered on these cases in 2007 and 2008 and contain similar uncontested facts. Although the cases are based on dif-

ferent tax years, each case involved an objection to real estate tax assessments or tax rates that was filed in the circuit court pursuant to the Code. 35 ILCS 200/23—10, 23—15 (West 2006). All of the complaints were filed before January 1, 2006, and all were settled without trial pursuant to section 23—30 of the Code. 35 ILCS 200/23—30 (West 2006). Agreed judgment orders were entered after January 1, 2006, requiring the Treasurer to pay interest or "statutory interest" on the refund amounts.

The Treasurer issued refunds to plaintiffs as ordered, paying the entire principal, but only paying the lower interest rate based on the CPI. The interest was computed from the date of final payment of the taxes through the date of the refund. The *General Motors* plaintiffs filed motions to enforce the agreed judgment orders, arguing that the Treasurer must pay interest at the 5% rate under section 23—20 of the Code for the entire period of the objected taxes. Alternatively, they argued that the interest should be paid at the 5% rate for the period until the amendment to section 23—20 became effective and the lower rate for the remainder. Following briefing and argument in the cases, the trial court ordered the Treasurer to pay 5% interest on the refunds from the date of final payment through December 31, 2005. For the period from January 1, 2006, through the final payment date of the refund, the interest rate was to be based on the CPI computation of the amended Code.

In *Yetto*, the trial court denied the Treasurer's motion for rehearing or clarification. The Treasurer filed a motion for certification of question for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) seeking resolution of the dispute over the proper interest rate. The Treasurer argued that a failure to accept the issue could result in hardship and wasted governmental resources in reprogramming the county system to calculate interest. This motion was withdrawn and, ultimately, the Treasurer filed these appeals seeking reversal based on her interpretation that the CPI-based rate applied to plaintiffs' entire refunds.

In addition, in the cases involving SBC and Newcastle, the Treasurer filed a written motion to stay payment of the additional interest pending appeal. In *Yetto*, the Treasurer made an oral motion to stay payment pending appeal. The trial court granted the motions to stay, contingent upon payment of judgment interest pursuant to section 2—1303 of the Code of Civil Procedure. 735 ILCS 5/2—1303 (West 2006). Plaintiffs subsequently filed their cross-appeals, arguing that the 5% rate should be paid for the entire refund payment. SBC and Newcastle also argue that the grant of judgment interest was proper.

## II. ANALYSIS

### A. Property Tax Objection Procedure and Review of Amended Statute

Both the obligation to pay taxes and the right to a refund or credit of taxes paid are purely creatures of statutory origin. *People ex rel. Eitel v. Lindheimer*, 371 Ill. 367, 371 (1939). Likewise, the right to interest on refunded taxes must be provided by statute. *Shapiro v. Barrett*, 68 Ill. App. 3d 656, 661 (1978). In fact, the right to interest on the overpayment of taxes was not provided for by our legislature until January 1, 1982. *Shell Oil Co. v. Department of Revenue*, 95 Ill. 2d 541, 549-50 (1983).

In Cook County, a taxpayer may seek a refund by challenging an assessment of its property by first filing a complaint with supporting affidavits with the Cook County assessor's office. 35 ILCS 200/9—85 (West 2006). No hearing is available at this stage and the assessor issues a unilateral decision to either not change the assessment or issue a revised assessment. The taxpayer may continue to object by filing a complaint with the Cook County Board of Review. 35 ILCS 200/16—95 (West 2006). An informal oral hearing including both sides may be held before the board of review issues a decision.

The taxpayer is afforded the statutory remedies of filing either an appeal of an assessment before the Illinois Property Tax Appeal Board (35 ILCS 200/16—160 (West 2006)) or a tax objection complaint in circuit court (35 ILCS 200/23—15 (West 2006)). Section 23—15 also applies to tax rate objections. In order to maintain such a complaint in the circuit court, for both tax rate and assessment objections, the taxpayer is required to pay under protest all of the tax due within 60 days of the first penalty date. 35 ILCS 200/23—5 (West 2006). In addition, all administrative remedies must be exhausted prior to filing the tax objection complaint. 35 ILCS 200/23—10 (West 2006). In a bench trial, the circuit court reviews the objections *de novo* to determine if the taxpayer has proven by clear and convincing evidence that the tax, assessment or levy was in error. 35 ILCS 200/23—15 (West 2006). If the court determines that the taxpayer has met its burden and grants relief of a refund of taxes paid, it also must order the payment of interest pursuant to section 23—20 of the Code. 35 ILCS 200/23—15, 23—20 (West 2006).

The resolution of the instant appeals revolves around how to calculate interest under section 23—20 of the Code. Specifically, the essential question to be answered is whether the legislature's amendment of section 23—20 in 2005 applies retroactively or prospectively. Section 23—20 reads in pertinent part, with emphasis added to the portion included in the 2005 amendment:

"If the final order of the Property Tax Appeal Board or of a court results in a refund to the taxpayer, refunds shall be made by the collector from funds remaining in the Protest Fund until such funds are exhausted and thereafter from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made. Interest from the date of payment, regardless of whether the payment was made before the effective date of this amendatory Act of 1997, or from the date payment is due, whichever is later, to the date of refund shall also be paid to the taxpayer at the *annual* rate of *the lesser of (i) 5% or (ii) the percentage increase in the Consumer Price Index For All Urban Consumers during the 12-month calendar year preceding the levy year for which the refund was made, as published by the federal Bureau of Labor Statistics.*" (Emphasis added.) 35 ILCS 200/23—20 (West 2006).

Since the facts are undisputed and we only consider the issue of statutory construction, our review is *de novo. Price v. Philip Morris, Inc.,* 219 Ill. 2d 182, 235 (2005).

## B. The *Landgraf* Test

For the consideration of the retroactive application of a statutory amendment, our supreme court has adopted the test set out by the United States Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). *Commonwealth Edison Co. v. Will County Collector,* 196 Ill. 2d 27, 33-39 (2001). Prior to the adoption of this test, Illinois courts followed either the "legislative intent approach" or the "vested rights approach" in reviewing retroactivity. *Commonwealth Edison,* 196 Ill. 2d at 34. Under the legislative intent approach, amendments are presumed to operate prospectively unless the express language clearly indicates a retroactive application. Under the vested rights approach, the intent of the legislature is largely ignored and the law is applied as it exists at the time of the appeal unless that would interfere with a vested right. *Commonwealth Edison,* 196 Ill. 2d at 34.

■ *Landgraf* "resolved the 'tension' between these rules by adopting [a new test] for determining when a new federal statute is applied to existing controversies." *Commonwealth Edison,* 196 Ill. 2d at 37, quoting *Landgraf,* 511 U.S. at 264, 128 L. Ed. 2d at 251, 114 S. Ct. at 1496. Under the *Landgraf* test, the court must first determine if the legislature has clearly expressed the temporal reach of the statute. *Commonwealth Edison,* 196 Ill. 2d at 38. If the legislature includes language clearly intending a retroactive application, that must be given effect, barring a constitutional prohibition. *Commonwealth Edison,* 196 Ill. 2d at 38.

If the language of the amendment does not indicate the temporal reach, the court must determine if applying the statute would have a "retroactive impact," defined by the *Landgraf* Court as " 'whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.' " *Commonwealth Edison*, 196 Ill. 2d at 37, quoting *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 261-62, 114 S. Ct. at 1505. If the court finds there would be no retroactive impact, the amendment may be applied, but if such an impact would occur, the court must presume such an effect was not intended. *Commonwealth Edison*, 196 Ill. 2d at 37. This approach is "time-neutral," meaning it is to be applied whatever temporal reach the legislature intends. *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 332 (2006).

While time-neutral, our supreme court has opined that the challenges presented by the application of this new approach "should prove uneventful." *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). It rendered this opinion because the legislature had already clearly indicated the default temporal reach of every statute in section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)), or the " 'general saving clause of Illinois' " (*Caveney*, 207 Ill. 2d at 92, quoting *People v. Glisson*, 202 Ill. 2d 499, 505 (2002)). Under this statute, when no temporal reach is specified, procedural rules may be applied retroactively, while the retroactive application of substantive changes to statutes is forbidden. *Caveney*, 207 Ill. 2d at 92. Accordingly, the *Caveney* court opined that it is "virtually inconceivable that an Illinois court will ever go beyond step one of the *Landgraf* approach." *Caveney*, 207 Ill. 2d at 94. This was taken a step further when the court held that an Illinois court would never need to go beyond step one of the *Landgraf* test. *People v. Atkins*, 217 Ill. 2d 66, 71 (2005).

The Treasurer argues that the plain language of the Code provides that no right accrues until the trial court orders a refund, and thus, the computation of interest must be made according to the law in effect at the time of the order. *McGinley v. Madigan*, 366 Ill. App. 3d 974, 982 (2006). She cites to the cardinal principle of statutory construction, which is to ascertain and give effect to the intent of the legislature. The first step in this review is to give the language of the statute its plain, ordinary and popularly understood meaning. Only if the language of the statute is ambiguous may the courts resort to other aids of construction. See *In re Powell*, 217 Ill. 2d 123, 135 (2005).

The Treasurer argues that by the plain terms of section 23—20 of the Code, payment of interest for property tax refunds issued on or after January 1, 2006, must be at the lower interest rate. The Treasurer asserts the language of the statute would be rendered inef-

fective and meaningless if the trial court's interpretation is allowed to stand. She argues that the legislature's use of "regardless" in the section with respect to whether payment of taxes was made before or after the 1997 amendment to the Code must be presumed to have meaning. She concludes that the only possible meaning is that, for all taxpayers, any refunds after the effective date would be paid under the new rate calculation.

In support of her plain meaning argument, the Treasurer also cites to the language of section 23—15(c) of the Code. She notes that section 23—15(c) provides that "if" the court orders a refund of any taxes paid, it shall order payment of interest "as provided in Section 23—20." 35 ILCS 200/23—15(c) (West 2006). Accordingly, the Treasurer argues, section 23—20 is only to be considered by the trial court after it finds that a property tax refund must be issued. Therefore, at the time of entry of the orders in the instant cases, the taxpayers were only entitled to the lower interest rate. The Treasurer concludes that our supreme court has made clear that this reading is acceptable as the "legislature may increase, decrease, or eliminate the statutory interest rate as long as it does not interfere with rights which have already accrued and vested under a previous statutory rate." *Noe v. City of Chicago*, 56 Ill. 2d 346, 350 (1974).

Plaintiffs respond that the language of the statute, as amended, is unambiguous. Plaintiffs argue that if the legislature had intended for a retroactive application, it would have said so explicitly. As an example of this, plaintiffs cite to section 23—5 of the Code, which begins "[b]eginning with the 1994 tax year" (35 ILCS 200/23—5 (West 2006)), and note that the amendment to section 23—20 contains no similar temporal specificity. For the amendatory act, the legislative debate occurred in March 2005, the amendment was passed in August 2005, and it became effective on January 1, 2006. See 94th Ill. Gen. Assem., House Proceedings, March 17, 2005; Pub. Act 94—558, eff. January 1, 2006 (amending 35 ILCS 200/23—20 (West 2006)). Plaintiffs assert that this is a clear indication by the legislature that the intent was for the prospective application of the amendment. See *People v. Brown*, 225 Ill. 2d 188, 201 (2007).

Plaintiffs add that, as noted above, the default application when substantive rights are involved is prospective, as provided by section 4 of the Statute on Statutes. 5 ILCS 70/4 (West 2006); *Caveney*, 207 Ill. 2d at 95. They argue that the Treasurer concedes that the taxpayer's right to protest tax assessments and pursue tax relief is a substantive right, but errs in claiming that the 2006 amendment is simply a procedural mechanism for calculating interest. Accordingly, they conclude that the analysis may stop here as, barring clear language,

*Caveney* and the Statute on Statutes require only prospective application.

We agree that the plain language of section 23—30 does not indicate a temporal reach. However, with the delayed implementation of the amendment, we find that the legislature intended a prospective application and the interpretation the Treasurer seeks was properly rejected. The Treasurer's reliance on the language regarding the 1997 amendment is misguided. The amendment did not add or modify this language. As plaintiffs argue, this language cannot be construed to apply to an amendment effective in 2006, but simply clarifies that the 1997 amendment did not modify the interest to be paid on refunds. Furthermore, while section 23—20 only comes into play "if" a refund is ordered under section 23—15, this does not eliminate the legislative intent behind section 23—20 or review of the application of that section.

In *Brown*, our supreme court considered the effect of amendments under the Juvenile Justice Reform Provisions of 1998 on a juvenile charged with a Class X felony before the effective date of the statute. The statute was enacted in June 1998 with certain provisions, including a provision with a rebuttable presumption for the transfer of juveniles charged with a Class X felony to criminal court, taking effect on January 1, 1999. *Brown*, 225 Ill. 2d at 193. The *Brown* court held that the delayed implementation date in the statute was clear evidence of the legislature's intent that the amendment be applicable only to proceedings commenced on or after the date it became effective and a new transfer hearing was required. *Brown*, 225 Ill. 2d at 201-02. Following *Brown*, this court recently held that the temporal inquiry may end here and consideration of whether the amendment was procedural or substantive is not required. *People v. Gilbert*, 379 Ill. App. 3d 106, 111 (2008).

■ The amendments to section 23—20 were signed into law in August 2005 to be effective on January 1, 2006. Under *Brown* and *Gilbert*, this is sufficient to demonstrate the legislature's intent that the amendment be applied prospectively. Therefore, under *Commonwealth Edison* and *Brown*, the amendment must be prospectively applied and consideration of whether the amendment is procedural or substantive is unnecessary. Likewise, the next step under *Commonwealth Edison*, a due process review of the effect of the amended statute, is unnecessary.

Following this determination, it was proper for the trial court to split the interest rate calculations. In *Noe*, our supreme court found that a split rate of interest was proper, prospectively applying the higher tax rate of the amended statute as of the date it took effect

while the plaintiff's judgment was outstanding. *Noe*, 56 Ill. 2d at 350. Similarly, in *In re Application of Anderson*, 123 Ill. App. 3d 507 (1984), and *Evangelical Hospital Ass'n v. Novak*, 125 Ill. App. 3d 439 (1984), the Second District of this court found that interest provided in the amended statute was effective January 1, 1982, and that, although the objectors filed their complaint after the effective date of the amendment, no interest was awarded because the payment under protest was made in 1981. *Anderson*, 123 Ill. App. 3d at 513. The *Novak* court followed *Anderson* in rejecting the claim of interest on protested payments in 1981. However, it allowed interest for the protested payment in 1982 since the filing and notice of protest and payment of taxes after the amendment triggered the revised provision. *Novak*, 125 Ill. App. 3d at 444.

Further support that the amended interest rate was intended for subsequent tax years may be gleaned from the fact that the effective date coincides with a new tax year. In oral argument, the Treasurer acknowledged that multiple cases were filed for each tax year and that for each tax year there were some cases settled or litigated prior to the effective date of the amended statute and some after that date. Therefore, it is possible that two different taxpayers objecting to their taxes for the 2003 tax year could go through the entire objection process and have orders following settlement or litigation entered on two different dates. Under the Treasurer's theory, if one judgment order was entered on December 31, 2005, that taxpayer would receive interest calculated at 5% on the refund for the 2003 tax year. If the second taxpayer's judgment order was entered on the next business day, January 3, 2006, it would receive only 2.3%, the CPI rate for the same tax year. Taking this a step further, consulting the Bureau of Labor Statistics' CPI chart, for the period 1999-2005, in ascending order, the average CPI was 2.2%, 3.4%, 2.8%, 1.6%, 2.3%, 2.7%, and 3.4%. United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index, All Urban Consumers, U.S. City Average (2009), http://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt.

Viewing this scenario under the general presumption that the legislature did not intend an unjust result in amending section 23—20, we cannot conclude that such a result treating virtually identical parties differently was intended. See *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001). This unfair treatment is especially clear when one considers that the reasons for a delay could be completely the result of the court, the Treasurer, or some other third party. This result is patently unfair and we cannot interpret the legislature to have intended such a result. Accordingly, the trial court properly ordered the Treasurer to pay 5% interest on the refunds from the date

of final payment through December 31, 2005. For the period from January 1, 2006, through the final payment date of the refund, the trial court properly ordered the interest rate be based on the CPI computation of the amended Code.

## C. Judgment Interest

To fully understand why the application of judgment interest is warranted, it is necessary to understand how a refund of the overpayment of the tax is separate from the interest paid on that refund. Long before the legislature authorized interest to be paid on refunds, only the amount overpaid on the taxes was refunded to the taxpayer. In fact, as set forth above, it was not until 1982 that interest was first paid on the refund. We fully agree with the Treasurer that the taxpayer is not entitled to interest unless authorized by legislation.

The significance of this separation between the refund of the overpaid tax and the payment of interest on that overpayment is of great import. Section 23—20 of the Code reads in part, "[i]nterest from the date of payment *** to the date of refund shall be paid to the taxpayer." 35 ILCS 200/23—20 (West 2006). Once that refund was made, there was no longer a provision in the Code to govern interest. In this case, the remainder of the amount of interest not paid as of "the date of refund" could only be a money judgment. We address the arguments on this issue fully below.

### 1. Waiver

Plaintiffs first assert that the Treasurer waived and/or forfeited the issue of judgment interest for her failure to preserve the issue and properly file a notice of appeal. SBC and Newcastle argue that the Treasurer forfeited her final argument regarding the stay and award of judgment interest for failing to raise the issue in a notice of appeal. In that case, the Treasurer filed her motion to stay and it was granted subsequent to filing her notice of appeal. The Treasurer did not file a second notice of appeal or an amended notice of appeal to incorporate the stay order granting judgment interest. Furthermore, they argue that the record is devoid of any objection by the Treasurer on this issue before the trial court and the stay order was not a part of the progression of the issue appealed, but a subsequent action. Accordingly, they conclude that this court does not have jurisdiction to hear this issue pursuant to Rule 303(a). Ill. S. Ct. R. 303(a) (eff. May 1, 2007); *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 137 Ill. App. 3d 550, 555-56 (1985).

Alternatively, they assert that she waived the issue for her failure to object before the trial court or raise it in a posttrial motion. *People v. Reid*, 136 Ill. 2d 27, 38 (1990). They note that a party cannot chal-

lenge a stay while benefitting from that stay during the pendency of the appeal. *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 380 (1999). Furthermore, SBC argues that it relied on the terms of the stay order in deciding not to appeal the decision to stay the judgment order and allowing the Treasurer to appeal the merits without hearing its argument would be prejudicial.

In *Yetto*, the issue was properly presented in the Treasurer's notice of appeal; however, the stay and judgment interest were granted following an oral motion. No transcript of the motion or resulting arguments is of record. Accordingly, the *Yetto* plaintiffs conclude that the only basis for the stay may be ascertained from the Treasurer's Rule 308 motion in that case.

The Treasurer responds that she did not file a specific notice of appeal regarding this issue, but this court has jurisdiction over the matter based on her timely notices of appeal on the underlying cases. She argues that this court may sustain the decision of a lower court for any appropriate reason, regardless of the grounds asserted. *People v. Johnson*, 208 Ill. 2d 118 (2003). The Treasurer does not explain how this rule applies to allow review of this issue. In any event, while SBC is correct that the Treasurer should have filed an amended or additional notice of appeal, if the error is considered one that is more form over substance and without prejudice to the other party, this court may maintain jurisdiction. *Ebert*, 137 Ill. App. 3d at 556. That is the case here, where the stay and grant of judgment interest naturally flowed from the judgment order and the issues were fully briefed by the Treasurer in her initial brief. Therefore, we address the merits of the issue.

### 2. The Stay Order and Grant of Judgment Interest

The Treasurer argues that the trial court erred in granting judgment interest when the stay orders were issued pending the appeals. On the Treasurer's motions, the trial court stayed the payment of the difference between the interest ordered to be paid and the refund and interest paid to the plaintiffs in all but GM's case. However, the trial court also ordered the payment of judgment interest at the rate of 6% per annum pursuant to section 2—1303 of the Code of Civil Procedure (735 ILCS 5/2—1303 (West 2006)) on the portion of the interest amount stayed.

Section 2—1303 provides:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, or any other

governmental entity. When judgment is entered upon any award, report or verdict, interest shall be computed at the above rate, from the time when made or rendered to the time of entering judgment upon the same, and included in the judgment. Interest shall be computed and charged only on the unsatisfied portion of the judgment as it exists from time to time. The judgment debtor may by tender of payment of judgment, costs and interest accrued to the date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of an appeal, or other steps to reverse, vacate or modify the judgment." 735 ILCS 5/2—1303 (West 2006).

The first question that must be resolved is whether the trial court maintained jurisdiction to grant judgment interest. Second, if vested with jurisdiction, the question remains as to whether the provisions of the Code control and foreclosed the option of judgment interest.

### 3. The Trial Court's Jurisdiction and *Sears Holdings Corp. v. Pappas*

Subsequent to the briefing in these cases but prior to oral arguments, the Treasurer moved to cite additional authority, arguing that a recent opinion from this court supported her argument. *Sears Holdings Corp. v. Pappas*, 391 Ill. App. 3d 147 (2009). In *Sears*, the plaintiffs were granted certificate of error refunds pursuant to section 20—178 of the Code, which provides a rate of interest "until the date the refund is paid." 35 ILCS 200/20—178 (West 2006). The plaintiffs received certificates of error and a refund from the Treasurer; however, the plaintiffs argued, and the court agreed, that the calculation of interest was incorrect. *Sears*, 391 Ill. App. 3d at 151-53.

After the Treasurer filed a notice of appeal, she filed a motion for stay in the trial court. The trial court granted the stay and also granted judgment interest to the plaintiffs pending the outcome of the appeal. *Sears*, 391 Ill. App. 3d at 153. The *Sears* court found that the trial court's stay order did not alter or affect the issues on appeal; however, since the underlying issue involved the proper computation of interest owed under the certificate of error refund, the court found that the trial court did not have jurisdiction after the notice of appeal was filed to grant judgment interest and that order was void. *Sears*, 391 Ill. App. 3d at 159. Under the rule that a void order may be attacked at any time, the *Sears* court continued to examine the merits of the judgment interest issue. Citing to a lack of reference to judgment interest in the Code, the *Sears* court found that the grant of judgment interest was not only void but improper because interest statutes must be strictly construed. *Sears*, 391 Ill. App. 3d at 160. The Treasurer argues that *Sears* controls and the judgment interest order is void.

We disagree with the holding in *Sears* on two fronts. First, the court in *Sears* found the order granting judgment interest was void because the grant of judgment interest following the notice of appeal went to the substance of the appeal. *Sears*, 391 Ill. App. 3d at 159. We agree with plaintiffs that the judgment interest granted does not modify or cover the substantive issue of the interest rate on the refund; rather, it is a separate rate computed based on a sum certain from the judgment order. Accordingly, we find that, like the stay order, this is a collateral action to the judgment pursuant to our Code of Civil Procedure and the trial court maintained jurisdiction for that act. *Wierzbicki v. Gleason*, 388 Ill. App. 3d 921, 926 (2009). As addressed below, while *dicta* because the court had found the trial court had no jurisdiction to grant judgment interest, we also disagree with the *Sears* court's treatment that the provisions of the Code controlled over section 2—1303.

### 4. Harmonious Application of Both Statutes

The Treasurer contends that, as a statutory creation, no interest is payable on property tax refunds absent statutory authorization. *Shapiro*, 68 Ill. App. 3d at 661. Pursuant to section 23—20, she argues that the Code provides for the payment of interest from the date taxes were paid through the date the taxes were refunded. As such, she asserts that plaintiffs' awards are limited solely to the interest provided by section 23—20 and therefore section 2—1303 does not apply. The Treasurer argues that if the grant of judgment interest were allowed to stand it would be an impermissible compounding of interest and it is clear that Illinois law forbids compound interest on judgments. See *O'Connell v. Pharmaco, Inc.*, 143 Ill. App. 3d 1061, 1071 (1986); *Lewis v. Stran-Steel Corp.*, 58 Ill. App. 3d 280, 282-83 (1978).

The Treasurer asserts that the application of section 23—20 in this case is similar to section 20—178 and, as applied in *Sears*, the trial court lacked authority to grant judgment interest in this case. The Treasurer properly argues above that under section 23—15(c) of the Code, the trial court may order a refund and interest pursuant to section 23—20 of the Code. 35 ILCS 200/23—15(c) (West 2006). The Treasurer also argues that section 23—20 of the Code only allows for the payment of interest on a property tax refund from the date of payment in protest to the date of refund. 35 ILCS 200/23—20 (West 2006).

Plaintiffs note that the court has a duty to interpret statutes to avoid inconsistency and give effect to both statutes that allegedly conflict. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 311-12 (2001). They also argue that the Code covers the payment of interest on a refund from the time of judgment to the date of the complete refund while

section 2—1303 operates to preserve the value of an award during the delay of a pending appeal. This interest rate applies only from the final judgment until payment is made after appeal and, therefore, they argue that this does not constitute compound interest. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301 (1993). They add that, when the Code is silent, our Code of Civil Procedure and court rules govern tax objections. *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 479 (2008). Therefore, they conclude that the statutes may be applied harmoniously as ordered by the trial court.

There is no disagreement that the Code controls what interest rate must be paid on a refund after a successful tax objection. For the typical situation where the Treasurer properly pays the ordered refund and interest, interest is computed pursuant to the Code up to the date the refund is paid. In the instant situations, and in *Sears*, there is no disagreement that the Treasurer made a "refund." The Treasurer is correct that the Code only provides for interest until the date the refund is made. However, section 23—15(c) also provides that "[a]ppeals may be taken from final judgments as in other civil cases" (35 ILCS 200/23—15(c) (West 2006)), and there remained an outstanding sum because she did not pay the entire interest ordered and filed a notice of appeal.

The fact the Treasurer made a full refund is of full import on this issue. The issue is not over the refund paid, but the calculation of the interest ordered on that refund. Initially, the trial court ordered the refund be paid with interest at the rate of 5% from the date of payment of the tax to December 31, 2005, and thereafter at the CPI-derived rate. After refunding the overpaid taxes and electing to pay only the lower interest rate, the Treasurer sought a stay from the trial court seeking relief from the trial court's order.

There is nothing in the Code covering this factual scenario that faced the trial court. As the Treasurer asserts, the language of section 23—20 controls and only allows interest until the payment of the refund. At the time the refund is paid, the interest due becomes a calculable sum certain, a money judgment to be paid. Accordingly, as treated by the Code, the refund and interest amount are separate and distinct. The trial court was confronted with the Treasurer's request to stay the payment of the entire amount of interest ordered so that she could pursue her appeal. The Code does not contemplate the partial payment of interest or delay in payment of interest after refund is made.

When the Code is silent, our Code of Civil Procedure and court rules govern tax objections. *Madison Two Associates*, 227 Ill. 2d at 479. The only language including appeals in the Code is in section

23—15(c), which allows for appeals as in any other civil action. In a typical civil appeal, an appeal bond or other form of security may be granted upon the stay of enforcement of a money judgment. While an appeal bond or other security is not required if a public agency appeals and seeks a stay, Rule 305(i) makes that decision discretionary. 210 Ill. 2d Rs. 305(a), (i). Similarly, judgment interest may be awarded to preserve the value of an award and avoid diminution in value.

In the instant matters, the Treasurer unilaterally decided to pay a refund and the lower interest rate in violation of the trial court's order. She subsequently moved to stay payment of the difference between that amount and the higher interest rate as ordered, pending these appeals. The Treasurer argued that SBC would not suffer hardship as the principal amount and a lower rate had been paid and in the event she succeeded on appeal it would be a logistical problem to regain the funds. The trial court granted the Treasurer's motion, but also granted judgment interest on the unpaid amount.

As addressed in *Heritage*, section 2—1303 applies to "awards, reports, and verdicts," which "are liquidated sums representing adjudications of disputed facts and issues upon which judgment was entered." *Heritage*, 157 Ill. 2d at 301. At the point of the Treasurer's appeals and motions to stay, she had unilaterally decided to pay the refund at the lower rate in direct violation of the trial court's order and without any authority under the Code. She then sought a stay to avoid the burden of reprogramming her computer system at taxpayer expense. Furthermore, following the citation above to the applicable CPI rates for this time period, there also was little incentive for the Treasurer to satisfy the outstanding amount not paid.

The Code allows for appeal of these matters as in other civil matters; it does not consider judgment interest and our rules for other civil appeals require judgment interest to protect the prevailing litigants' interests. The Code does not allow for partial payments or installment payments of interest or of the refund of overpaid taxes. Such action must be strongly discouraged. Allowing the Treasurer to avoid judgment interest would allow her to violate the judgment order and deprive plaintiffs of the clear protections provided by statute. If the refund and interest on the refund are not paid in total, it is unfair to the taxpayer to have to undergo further effort to be paid properly. Without judgment interest there is little incentive for the Treasurer to make prompt payments as ordered.

### 5. Application to GM's Case, Where No Stay or Judgment Interest Was Ordered

Finally, as noted above, the Treasurer did not move for a stay and judgment interest was not granted in GM's case. As in the other cases,

the Treasurer tendered payment of the full refund of the overpaid taxes to GM with interest calculated for the whole period based on the lower, CPI-based rate. GM argues that when a tender of payment does not comprise the entire amount due, including interest, it is invalid. *Lake County Forest Preserve District v. Vernon Hills Development Corp.*, 92 Ill. 2d 72, 78-79 (1982). Therefore, GM concludes that the tender is invalid and interest continues to accrue from the date of judgment to the final date of full payment. *Lake County Forest Preserve*, 92 Ill. 2d at 80.

However, we have found that complete refunds were made in each case, foreclosing the further application of the Code. Accordingly, GM's argument must fail. As noted throughout, interest may only be provided by statute and the Code clearly contemplates the accrual of interest until the refund is made.

A party may waive a right to interest under section 2—1303 if it fails to raise the issue before the trial court. *Hillyer v. Owens Illinois Glass Co.*, 183 Ill. App. 3d 864, 867 (1989). Accordingly, because judgment interest was not sought or granted to GM, it is not entitled to judgment interest. However, GM is entitled to the payment of 5% interest on the refund for tax payments up to December 31, 2005, to the date the Treasurer tendered the refund, consistent with this opinion, minus a credit for the amount already paid as interest. The payment of interest at the CPI-derived rate for tax payments after January 1, 2006, was proper.

### III. CONCLUSION

In summation:

1. The Treasurer will calculate interest on tax refunds at the rate of 5% from the time of payment of the tax in protest or from the date payment was due, whichever is later, to December 31, 2005;

2. The Treasurer will subtract any interest already paid, calculated on the refund utilizing the CPI rate;

3. The Treasurer has properly paid the amount of interest due on refunds from January 1, 2006, to the date of refund;

4. For cases where an order was entered for judgment interest, the Treasurer shall pay 6% on the amount not paid as calculated above in section 1; and

5. For those cases where there was no order of judgment interest, the Treasurer is not obligated to pay any interest after the refund was made.

For the foregoing reasons, the rulings of the trial court are affirmed.

Affirmed.

QUINN and COLEMAN, JJ., concur.